**CHESTER COMMUNITY CHARTER SCHOOL, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION, Secretary of Education Gerald L. Zahorchak, Chester–Upland School District, Chester–Upland School District Board of School Directors, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 18, 2012.

Decided May 23, 2012.

Reconsideration Denied June 22, 2012.

See also, 996 A.2d 68.

---

Joseph T. Doyle, Media, and Thomas A. Leonard, Philadelphia, for petitioner.

Roberto T. Datorre, Harrisburg, for respondent Department of Education.

Allison S. Petersen, Huntingdon Valley, for respondent Chester–Upland School District.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

Before this Court is an Application for Summary Relief filed by Chester Community Charter School (Chester School)[1] seeking to compel the Secretary of Education (Secretary) to withhold state subsidies from the Chester–Upland School District (School District) because it failed to fund Chester School in the amounts required by law for school years dating from September 1998 to September 2007 in the total amount of $7,490,171.75. For the reasons that follow, the Application is denied.

### I.

This case arises from a four-count Petition for Review filed in May 2009, later amended, in which Chester School alleged that since at least September 1998, the School District had failed to use the proper funding rates in making its mandatory payments for special education students to Chester School resulting in over $7 million in underpayments. Chester School pled that it had provided the Department of Education (Department) in 2007 with all of the necessary documentation to establish the School District's underpayments but that the Secretary failed to make the necessary deductions as required by Section

---

1. Chester School is a charter school that operates two charter elementary school campuses and one charter middle school campus in the City of Chester, Delaware County. (May 29, 2009 Amended Complaint at 6.)

1725–A(a)(5) of the Charter School Law.[2] It also sought to enjoin the Department's unilateral appointment of an administrative hearing officer to consider Chester School's entitlement to the underpayment of funds scheduled for August 15, 2008.[3]

In its Petition for Review, Chester School requested that this Court 1) permanently enjoin the Department from initiating administrative proceedings to address its entitlement to statutory funds under the Charter School Law; 2) declare that the Department and School District failed to comply with their statutory obligations under the Charter School Law; 3) require the Department and School District to follow the Charter School Law's funding requirements; and 4) compel the School District to immediately reconcile the underpayments of funds owed to Chester School.

The School District and the Department filed preliminary objections, which this Court overruled as to Counts I (Mandamus), III (Declaratory Judgment) and IV (Permanent Injunction) but sustained as to Count II (Writ of Prohibition). *Chester I.* Specifically, in Count I, contrary to the Department's contention that it was discretionary to withhold subsidies, we determined that the Department had a mandatory, non-discretionary duty to withhold subsidies to a school district based upon the estimated amount documented by a charter school. "There is no air in Section 1725–A(a)(5). The Secretary's responsibility to withhold subsidies is mandatory and ministerial. There is no discretion to exercise because the estimated amount to be withheld is determined by the charter school's documentation." *Chester I,* 996 A.2d at 77–78. In Count III, although the Department argued that it was a neutral party and Chester School had not shown that it suffered a direct, immediate or substantial injury as a result of its actions, we held that Chester School alleged sufficient facts establishing a direct, immediate and substantial injury and that an actual and ripe controversy existed between it, the School District and the Department. As to Count II, we overruled the preliminary objection insofar as it was based upon the proposition that the hearing on the withholding of subsidies took place after the subsidies were withheld. However, we sustained the demurrer *because the parties agreed to stay the hearing pending the Court's decision on the merits.* "[The School District] cannot be restrained from asking for a hearing. Indeed, the Charter School Law guarantees it a hearing where it contests any amount withheld from its state subsidies." *Id.,* 996 A.2d at 80. For that reason, we also overruled the preliminary objection to Count IV.

The School District then filed an Answer and New Matter alleging that Chester School's Petition for Review should be dismissed for numerous reasons including, *inter alia,* that it failed to exhaust administrative remedies and that this Court lacked subject matter jurisdiction; that its claims were barred by res judicata and/or collateral estoppel or laches; and that its claims were barred by the applicable statutes of limitations because the claims were for school years up to a decade or more in the past.[4]

---

**2.** Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17–1725–A(a)(5), added by the act of June 29, 2002, P.L. 524. The Charter School Law amended the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

**3.** The hearing never was held because the parties agreed to stay the hearing pending this Court's decision on the merits. *See Chester Community Charter School v. Department of Education,* 996 A.2d 68 (Pa.Cmwlth.2010) (*Chester I* ).

**4.** In response to the School District's second

## II.

The dispute on the merits focuses on Chester School's claim that it did not receive all the funds to which it was entitled for school years 1998 through 2007 for educating special education students. It alleges that the School District took credit against "total special education expenditure" cost money spent on Early Intervention services for "all handicapped infants, toddlers, and their families and eligible young children,"[5] putting severely handicapped placements and educating incarcerated individuals in peril. In taking those deductions, Chester School contends that the School District did not properly apply the funding formula set forth in Section 1725–A(a)(3) of the Charter School Law.

The basis for Chester School's argument is a comparison between the funding formula for "non-special education students" contained in Section 1725–A(a)(2) with the funding formula contained in Section 1725–A(a)(3) for "special education students." It points out that Section 1725–A(a)(2) specifically allows for deductions from "budgeted total expenditures." That section provides that:

> For non-special education students, the charter school shall receive for each student enrolled no less than the budgeted total expenditure per average daily membership of the prior school year, as defined in section 2501(20), minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt

service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the department. This amount shall be paid by the district of residence of each student.

Because the funding formula for non-special education students enumerates all permitted deductions from "budgeted total expenditure," which total seven deductions, then followed by the next sentence that "this amount shall be paid," the General Assembly did not intend for any additional deductions, and that was the amount that the School District was required to pay to Chester School for "non special education children."

Chester School then compares that provision with § 1725–A(a)(3) which does not permit any deduction. That provision provides:

> For special education students, the charter school shall receive for each student enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of section 2509.5(k) times the district of residence's total average daily membership for the prior school year. This amount shall be paid by the district of residence of each student.

Chester School contends that the absence of deductions when contrasted against the list of seven deductions in (a)(2) means that the General Assembly did not intend for any deductions from a school district's total special education ex-

amended Answer and New Matter, Chester School filed preliminary objections which this court overruled by order dated June 21, 2011.

5. *See* Section 301 of the Early Intervention Services System Act, Act of December 19, 1990, P.L. 1372, 11 P.S. § 875–302.

penditure. Because the funding formula of special education students is likewise mandatory, but unlike the funding formula for non-special education students does not provide for any additional deductions, Chester School contends that means that the Charter School Law requires a school district to take its total special education budget without deductions and multiply it times the appropriate modifiers described in the statute and nothing more.

The School District contends that it did calculate the formula correctly because the Charter School Law does not define what is meant by "total special education expenditure" as used in (a)(3), and using the principle of statutory construction at 1 Pa. C.S. § 1921(c)(8), that when words of the statute are not explicit, we should look to "[l]egislative and administrative interpretations of such statute." It then points to a 2002 "PDE–363 Funding for Charter Schools—Calculation of Selected School Expenditures per Average Daily Membership," which provides instructions on filling out the PDE–Form, which is how the School District will determine the amount school districts will pay for a charter for educating charter school students. Pursuant to this guidance, it contends, it made the deductions being challenged here. Given the purported ambiguity in those provisions and how the Department—the agency charged with its enforcement has interpreted those provisions, the School District contends that the deductions it took from "total special education expenditures" were proper.

## III.

While that is the dispute involving the underlying merits, the central controversy in this case is how and by whom the merits are decided. The method by which funding controversies are determined is gov-erned by Section 1725(a)(5) of the Charter School Law which provides the following:

(5) Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year. A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding pursuant to article XXV. *If a school district fails to make a payment to a charter school as prescribed in this clause, the secretary shall deduct the estimated amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school.*

24 P.S. § 17–1725–A(a)(5). Further, Section 1725–A(a)(6) of the Charter School Law states:

(6) *Within thirty (30) days after the secretary makes the deduction described in clause (5), a school district may notify the secretary that the deduction made from State payments to the district under this subsection is inaccurate. The secretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.*

24 P.S. § 17–1725–A(a)(6). Under these provisions, if a school district does not make its required statutory payments, the Secretary, upon notification by the affected charter school, shall deduct the estimated amount as documented by the charter school from any and all state payments

made to the school district. If a school district refuses to transfer funds to a charter school, the Secretary has no discretion to decline to withhold the estimated amount of payment from the charter school. Thus, the Secretary has a mandatory, non-discretionary obligation to deduct the estimated amount of payment due a charter school by a school district upon submission of supporting documentation by the charter school. A school district has 30 days to challenge the accuracy of the estimated amount withheld by the Secretary and to require the Secretary to provide the school district with an opportunity to be heard on the estimated deduction.

### IV.

The matter that is now before us is Chester School's Application for Summary Relief [6] in which it essentially makes two arguments. The first is that the Department ran afoul of its jurisdictional authority by unilaterally initiating administrative proceedings in 2008 to compel Chester School to justify its entitlement to statutory funding. It did so by circumventing the process found at 24 P.S. § 17–1725–A(a)(5) and (6) and initiating proceedings *sua sponte*. Chester School argues that the administrative process prescribed by the Charter School Law is set forth in the two paragraphs at 24 P.S. § 17–1725–A(a)(5) and (6) and only those paragraphs. They describe what a charter school must first do before seeking relief for underpaid sums—make a demand. Chester School states that it has made its demand with

documentation. After the demand is made, it is up to the Secretary to deduct the estimated amount because there is a mandatory duty on the part of the Secretary to do so. If the Secretary fails to make the deduction, then the school district may notify the Secretary that the deductions were not made and request a hearing.

Chester School argues that this administrative procedure applies to its current requests for past due funds for which it provided documentation to the Secretary. It also argues that it is undisputed that Chester School has repeatedly demanded, via letters with supporting documentation, that the "PDE [Department] withhold the funds due and owing for the 1998–2008 school years." (Chester School's Reply in Support of Application for Summary Relief at 13.) It also argues that it is undisputed that funds were never withheld and never remitted by the Department. Therefore, Chester School has done everything by way of administrative process that is required, and it has nothing left to exhaust. It contends that as a result, it is entitled to a mandamus, declaratory judgment and a permanent injunction ordering and declaring that the Secretary failed to comply with its ministerial and mandatory duty under the Charter School Law to withhold and remit estimated underfunding, declaring that the School District has improperly applied the funding formula and enjoining the Department to hold an administrative hearing before the School District requests a hearing on the withholding.

**6.** Applications for summary relief are governed by Pa. R.A.P. 1532(b), which provides: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear." "In ruling on application for summary relief, we must view the evidence of

record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law." *Central Dauphin School District v. Department of Education*, 143 Pa.Cmwlth. 374, 598 A.2d 1364, 1366–67 (1991).

Aside from contending that the deductions that it took were proper, the School District contends that the grant of summary judgment is inappropriate because there are material issues of fact, Chester School's claims are untimely because it did not take a timely appeal seeking the withholding of funds, it is barred by a statute of limitation or by laches and, in any event, Chester School failed to exhaust its administrative remedies. For its part, the Department echoes the School District's position that Chester School has failed to exhaust its administrative remedies. · It contends that the procedure that applies under Section 1725–A(a)(5) & (6) does not apply as that provision only applies to claims made for funds within an operating school year because if a claim for withholding is not timely made, there will be no money left to withhold.

## V.

■ To resolve this matter, we must determine whether we can grant the relief requested by Chester School given that all the parties agree that there is or was an administrative remedy. Chester School contends that it has made a demand for withholding of funds that it believes it is owed with proper documentation, it did all that it can do to initiate the administrative process in Sections 1725–A(a)(5) and (6) and the Secretary failed to comply, and we should order the Secretary to withhold and remit the estimated underfunding. However, all that Section 1725–A(a)(5) mandates is that the money be withheld, akin to an escrow, assuming that the funds are still available and not spent until the school district appeals, and if it does appeal, the appeal is resolved. If a charter school was making a claim regarding the underfunding of a particular payment within the current school year and the Secretary failed to withhold, we would issue an order to the Secretary to only

withhold the funds, and a school district could then appeal so that a determination could be made as to whether an underfunding occurred and the matter would be resolved. An order directing the Secretary to remit those funds would only be appropriate after the appeal had been resolved in favor of the charter school and the Secretary failed to remit the withheld funds to the charter school.

However, those are not the facts here, and that leads to the Department's contention that Sections 1725–A(a)(5) and (6) only apply to claims for underpayment made against the 12 payments made during the school year. The Department also points out that the Secretary cannot withhold funds that the School District has already spent. In *Chester I*, we held that those provisions covered all disputes regarding underpayment stating:

The School District contends, however, that Section 1725–A(a)(6) has no application here because that provision covers disputes over whether a student was actually enrolled in the charter school during the time period in question and whether the student was a resident of the school district whose subsidy was withheld. It does not cover whether the calculated daily payment is correct. This construction is at odds with the language of the provision. Whether a student resides in the district and is enrolled in the charter school is one issue. However, that "whether clause" is followed by a second "whether" clause, i.e., "whether the amounts deducted from the school district were accurate." 24 P.S. § 17–1725–A(a)(6). In short, the Section 1725–A(a)(6) hearing is intended to cover the accuracy of the Secretary's deduction of a subsidy, *for any reason,* where the school district fails to make the prescribed monthly

payment to a charter school in the correct amount. (Emphasis added.)
996 A.2d at 78.

While we held that 24 P.S. § 17–1725–A(a)(5) and (6) cover all disputes, we did not address whether those provisions required the Secretary to withhold funds appropriated for the current school year for a claim made for purported underfunding in previous school years. Under Section 1725–A(a)(5), challenges are made by the charter school to one or all of the 12 equal monthly payments calculated by the school district based on the budgeted education expenditures within the operating school year. Because that ties the challenge to the withholding to a particular school year, withholding for purported underfunding can only be made against funds appropriated in the school year for which payment is authorized to withhold disputed amounts.[7]

■ Our previous holding in *Chester I* that Sections 1725–A(a)(5) and (6) provide the exclusive remedy for underpayment(s) to a charter school, and our holding in this case that withholding can only be made against appropriations for the school year in question, leads us to question what, if any, is the triggering event for an appeal when a school district has no money and there are no funds to withhold. When there are no funds to withhold, the Secretary must still acknowledge the receipt of the claim for underpayment from the charter school, state that there are no appropriated funds for the year in which the charter school claim can be withheld, and because there is no "trigger" for the School District to appeal, the Secretary must inform the charter school that the claim will go directly to a hearing. In keeping with the process under Section 1725–A(a)(6) that the school district has to take the appeal, the school district still has the burden to prove the claim is invalid. Of course, the school district can defend the purported claim based on the timeliness or validity of the claim.

■ Because we have previously held that the administrative remedy is the exclusive remedy to hear disputes regarding payments made to charter schools by school districts, this court will not address the merits of the claims or whether the claims were untimely filed. Accordingly,

---

7. The dissent disagrees with this reasoning because Section 1725(a)(5) states that the money has to be withheld "from any and all State payments." As explained above, that applies to "any and all" funds appropriated for that school year only.

To justify its position, the dissent, in footnote 2, apparently to excuse not giving deference to the Department's interpretation of a statute by adopting the position contained in Chester School's brief, posits that the Department changed its position in this case from the position it took in *School District of Philadelphia v. Department of Education*, 41 A.3d 222 (Pa.Cmwlth.2012), where it withheld payments for back years from current year's payments. First, to be accurate, if there was any change of position, it occurred in *School District of Philadelphia* because the withholding in that case occurred in September 2010, *Id.* at 225, while the Secretary in this case re-

fused to withhold back years' obligations from current year funding in August 2007. *See Chester I*, 996 A.2d at 73. Second, the only official position that the Department has taken as to what funds can be withheld is in this case because in *School District of Philadelphia*, unlike here, the school district did not object to the withholding due to the size of its budget, the withholding did not have a material impact on its operations, and its desire to have the issue of charter school enrollment caps decided.

In any event, if we were to adopt the dissent's interpretation, summary relief would still be denied because of the futility of ordering the Secretary to withhold funds for the reasons set forth in *Chester Community Charter School v. Dept. of Education*, 44 A.3d 715 (Pa.Cmwlth.2012), not to mention that under the dissent, another $7 million would be required to be withheld.

the application for summary relief is denied. The Secretary is to hold a hearing, previously held in abeyance, in accordance with this opinion. We note that the Secretary must address the issue of bias and conflict of interest per our decision in *Chester I* prior to addressing the merits of this case to ensure that an impartial hearing will be conducted.

Judges COHN JUBELIRER and LEAVITT did not participate in the decision in this case.

## ORDER

AND NOW, this *23rd* day of *May*, 2012, the Application for Summary Relief filed by Chester Community Charter School is denied. The Secretary is to hold a hearing, previously held in abeyance, in accordance with this opinion. We note that the Secretary must address the issue of bias and conflict of interest per our decision in *Chester I* prior to addressing the merits of this case to ensure that an impartial hearing will be conducted.

## DISSENTING OPINION BY Judge BROBSON.

I respectfully dissent.

Section 1725–A of the Charter School Law (Law)[1] addresses funding for charter schools. Funding is on a per-enrolled-student basis, with separate calculations for special and non-special education students. Section 1725–A(a)(2), (3) of the Law. School districts are to remit to charter schools the appropriate amount for the enrolled students "in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year." Section 1725–A(a)(5) of the Law.

The General Assembly anticipated that disputes would arise between charter schools and school districts over funding. It thus built into the Law a process to resolve such funding disputes:

(5) ... If a school district fails to make a payment to a charter school as prescribed in this clause, the secretary shall deduct the estimated amount, as documented by the charter school, from any *and all State payments* made to the district *after receipt of documentation from the charter school.* •

(6) Within thirty (30) days after the secretary makes the deduction described in clause (5), the school district may notify the secretary that the deduction made from State payments to the district under this subsection is inaccurate. The secretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

Section 1725–A(a)(5), (6) of the Law (emphasis added). In *Chester Community Charter School v. Department of Education*, 996 A.2d 68 (Pa.Cmwlth.2010) (*Chester I*), this Court held that "[t]here is no air in Section 1725–A(a)(5). The Secretary's responsibility to withhold subsidies is mandatory and ministerial. There is no discretion to exercise because the estimated amount to be withheld is determined by the charter school's documentation." *Chester I,* 996 A.2d at 77–78. The Court continued:

---

**1.** Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. § 17–1725–A.

The Department has a mandatory, non-discretionary duty to withhold subsidies to a school district based upon the estimated amount documented by the charter school. It is then incumbent upon the school district to request a hearing if it does not agree with the amount of the Department's withholding. A prompt hearing could be conducted before any funds actually change hands. It is clear, however, that as between the school district and the charter school, the legislature has decided that more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a delay in the receipt of the state subsidy to which it is entitled.

*Id.* at 78.

The majority opines that the duty of the Secretary to deduct under Section 1725–A(a)(5) only applies to funds appropriated by the State for the year in which the alleged underfunding occurred. (Maj. Op. at 722.) I respectfully disagree, because I cannot reconcile the majority's position with the clear and unambiguous language chosen by the General Assembly, directing the Secretary to deduct the amount the charter school estimates from "*any and all State payments* made to the district *after receipt of documentation from the charter school.*" (Emphasis added.) The majority's interpretation also cannot be reconciled with Section 1725–A(a)(6), pursuant to which the administrative hearing on a charter school's claim of underpayment is triggered only *after* the school district is notified of the required deduction. This particular provision of the Law further supports my reading of Section 1725–A(a)(5)—*i.e.*, that a deduction must be made in every case against *any and all* State payments and not, as the majority posits, only in cases where there are yet-to-be distributed State funds for the school year in question. Otherwise, a school district might never be in a position to exercise the administrative remedy provided in the Law. Although the majority posits a reasonable alternative administrative remedy at page 13 of its opinion, which is consistent with its construction of Section 1725–A(a)(5), to account for this possibility, the alternative does not comport with the General Assembly's intent as to how these funding disputes are to be resolved. I, therefore, cannot adopt it.[2]

**2.** The majority, in essence, adopts the position taken by the Department in its brief at pages 17 through 21. The position of the Department in this appeal, however, stands in stark contrast to how the Department handled a *more recent* funding dispute between the Philadelphia School District and the Walter D. Palmer Leadership Learning Partners Charter School (Palmer Charter). *School District of Philadelphia v. Department of Education*, 41 A.3d 222 (Pa.Cmwlth.2012) (en banc). In that case, Palmer Charter claimed that the Philadelphia School District underfunded Palmer Charter during school years 2007–08, 2008–09, and 2009–10. Palmer Charter, however, did not request the withholding under Section 1725–A(a)(5) until July 13, 2010. Nonetheless, on September 10, 2010, the Department notified the Philadelphia School District that, based on Palmer Charter's request and pursuant to Section 1725–A(a)(5) of the Law, it withheld approximately $1.7 million from the Philadelphia School District's *next* Basic Education Subsidy—*i.e.*, an amount reflective of Palmer Charter's entire claim (not just the 2009–2010 school year). The Secretary then held the required hearing under Section 1725–A(a)(6), at the request of the Philadelphia School District. The Secretary then issued his adjudication, ruling for the most part in Palmer Charter's favor and directing the Department to distribute to Palmer Charter approximately $1.25 million of the total funds withheld. Following oral argument on February 15, 2012, we affirmed.

The Department advances a limited interpretation of the Secretary's power/duty under Section 1725–A(a)(5) in this case that simply cannot be reconciled with its handling of the Palmer Charter dispute. I recognize that an agency is permitted to change its interpreta-

Here, it is undisputed that beginning on April 27, 2007, Petitioner Chester Community Charter School (Charter School) notified the Pennsylvania Department of Education (Department) of its claim that the Chester–Upland School District (District) had underfunded the Charter School by $7 million over the course of eleven (11) school years and demanded that, pursuant to Section 1725–A(a)(5), the Secretary of Education (Secretary) deduct the Charter School's estimated amount from all State payments to the District. It is also undisputed that the Secretary refused to do so and, instead, scheduled a hearing on the Charter School's claim.

Based on these undisputed facts, the clear and unambiguous language of the Law, and this Court's opinion in *Chester I*, I would grant summary relief in favor of the Charter School on Count I of its original jurisdiction petition for review (mandamus),[3] and direct the Secretary to "deduct the estimated amount, as documented by the [Charter School], from any *and all State payments* made to the [District]" until such time as the dispute over the Charter School's claim and the District's defenses[4] are adjudicated at the agency level. As the Court noted in *Chester I*, to the extent there are any concerns that the withholding required by the Law may adversely affect the District, the Secretary should act with all due haste in resolving the controversy.

Judges McCULLOUGH and COVEY join in this dissenting opinion.

---

tion of a statute. *See Pa. Sch. Bds. Ass'n, Inc. v. Pub. Sch. Emps. Ret. Bd.*, 580 Pa. 610, 863 A.2d 432 (2004). Indeed, I would encourage an agency to do so where it determines that the prior determination was erroneous. But here, it appears that the Department has simultaneously advanced two inconsistent interpretations of the same statutory provision in separate, pending matters before the Secretary and then before this Court on appeal, without acknowledgment or explanation. That is troubling. *Cf. Barringer v. State Emps. Ret. Bd.*, 987 A.2d 163, 166 (Pa.Cmwlth.2009) ("While administrative agencies are not bound by prior precedent, they must render consistent decisions and should either follow, distinguish, or overrule their own precedent."). For the reasons explained above, I believe that the Secretary's handling of the Palmer Charter case is consistent with the General Assembly's intent, as set forth in Section 1725–A(a)(5), (6) of the Law and is the interpretation that should guide disposition of this matter.

3. Because I would grant the relief requested in Count I, I would deny the Charter School's application for summary relief on the remaining counts. Granting the mandamus relief adequately restores the parties to the appropriate procedural posture under the Law. The Charter School is entitled to nothing more and nothing less in the context of this original jurisdiction proceeding. *See GTECH Corp. v. Commonwealth, Dep't of Revenue*, 965 A.2d 1276 (Pa.Cmwlth.2009) (en banc) (recognizing original jurisdiction over claim that agency refused to afford administrative remedy).

4. The District has raised several defenses to the Charter School's claims, including, *inter alia*, the timeliness of the Charter School's underfunding claims dating back to as far as the 1997–98 school year. An adjudicative process before the Department is the appropriate place to decide the merit of all of the District's defenses in the first instance. I also agree with the majority that the Department must address the issues of bias and conflict of interest per our decision in *Chester I* prior to addressing the merits of this case. An impartial hearing, before an adjudicator that is not pre-disposed to favor one side (the District) over the other (the Charter School), is vital.