# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Virtual Charter School; :
Pennsylvania Leadership Charter :
School; Agora Cyber Charter School; :
ASPIRA Bilingual Cyber Charter :
School, :
                        Petitioners :
                         :
              v. :
                         :
Commonwealth of Pennsylvania, :
Department of Education; The Secretary :
of Education, Pedro A. Rivera, (In his :
Official Capacity), : No. 561 M.D. 2019
              Respondents : Argued: September 16, 2020


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE J. ANDREW CROMPTON, Judge


OPINION BY
JUDGE COVEY                           FILED: December 21, 2020

      Before this Court is the Department of Education's (Department) and the Secretary of Education Pedro A. Rivera's (Secretary)[1] (collectively, PDE) Preliminary Objection in the nature of a Demurrer (Preliminary Objection) to Pennsylvania Virtual Charter School, Pennsylvania Leadership Charter School, Agora Cyber Charter School and ASPIRA Bilingual Cyber Charter School's[2] (collectively, Cyber Charter Schools) Petition for Review (Petition) against PDE

---

[1] Noe Ortega is the current Acting Secretary of Education.

[2] By December 13, 2019 Order, this Court discontinued ASPIRA Bilingual Cyber Charter School from this action.

seeking a declaratory judgment and an injunction enjoining the Department from collecting a fee from charter schools any time the Department processes a redirection request under the Charter School Law (CSL)[3] (Redirection Fee). After review, we overrule the Preliminary Objection.

## Background

On September 4, 2019, the Department notified the Cyber Charter Schools by email that it would impose a fee on charter schools each time the Department processed a redirection request.[4] *See* Petition ¶27; *see also* Petition Ex. B. The Department further announced that the fee would be imposed upon all requests made for September 2019. *See* Petition ¶28; *see also* Petition Ex. B. The Department did not state whether the fee would be charged before or after a reconciliation was processed or paid to charter schools or was a condition for payment of redirection for charter schools. *See* Petition ¶29; *see also* Petition Ex. B.

On October 3, 2019, the Cyber Charter Schools filed the Petition in this Court's original jurisdiction against PDE seeking a declaratory judgment and an injunction enjoining the Department from collecting Redirection Fees. On October 10, 2019, the Cyber Charter Schools filed an Application for Preliminary Injunction. On November 6, 2019, PDE filed the Preliminary Objection. On November 7, 2019,

---

[3] Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. §§ 17-1701-A - 17-1732-A.

[4] On September 12, 2019, the Cyber Charter Schools responded to the announcement stating, *inter alia*:

> We are aware of no legal authority that permits the [Department] to penalize the charter schools for a school district's active and deliberate violation of the laws that your office is required to correct. So that we can continue to be in full compliance with the law, kindly provide a response to this correspondence by no later than Friday, September 20, 2019.

Petition Ex. C.

PDE filed an Answer to the Cyber Charter Schools' Application for Preliminary Injunction. On December 6, 2019, the Cyber Charter Schools filed their Answer to PDE's Preliminary Objection. By December 18, 2019 Order, this Court, upon all parties' agreement, held in abeyance the Redirection Fee implemented by the Department as to all charter schools; directed the Department not to process, and to make reasonable efforts to return any checks that had been issued to the Department related to the Redirection Fee and not to issue further invoices for the Redirection Fee payment; and stayed all discovery, pending decision on PDE's Preliminary Objection to the Petition.

### Discussion

> In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, *it must appear with certainty that the law will not permit recovery*, and any doubt should be resolved by a refusal to sustain them.

> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review in the nature of a] complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. *When ruling on a demurrer, a court must confine its analysis to the* [*petition for review in the nature of a*] *complaint*.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (emphasis added; citations omitted). "[C]ourts reviewing preliminary objections may not only consider the facts pled in the complaint, but also any documents or exhibits attached to it." *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014).

3

## Controlling Law

Before addressing the issues, the Court sets forth the relevant law. Section 1725-A(a) of the CSL mandates, in relevant part:

> Funding for a charter school shall be provided in the following manner:
>
> . . . .
>
> (2) For non-special education students, **the charter school shall receive for each student enrolled no less than the budgeted total expenditure per average daily membership of the prior school year**, as defined in [S]ection 2501(20) [of the Public School Code of 1949 (School Code),[5] 24 P.S. § 25-2501(20)], minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the [D]epartment. **This amount shall be paid by the district** of residence of each student.
>
> (3) For special education students, **the charter school shall receive for each student enrolled the same funding as for each non-special education student as provided in clause (2)**, **plus** an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of [S]ection 2509.5(k) [of the School Code,[6] 24 P.S. § 25-2509.5(k)] times the district of residence's total average daily membership for the prior school year. **This amount shall be paid by the district** of residence of each student.

---

[5] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 - 27-2702.

[6] Added by Section 18 of the Act of August 5, 1991, P.L. 219.

. . . .

(5) Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year. A student enrolled in a charter school shall be included in the average daily membership of the student's district of residence for the purpose of providing basic education funding payments and special education funding pursuant to Article XXV. If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall deduct the estimated amount, as documented by the charter school, from any and all [s]tate payments made to the district after receipt of documentation from the charter school. No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the school district for the previous school year. **If a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the district** after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

24 P.S. § 17-1725-A(a) (emphasis added).

Section 1 of The Administrative Code[7] provides:

**The [Secretary**[8]**] may fix and collect reasonable fees for certain services rendered to persons or agencies other than departments of the [s]tate government by the [Department**[9]**]** in the distribution of lantern slides and films, in furnishing certified copies, or photographic or

---

[7] Act of April 2, 1925, P.L. 122, *as amended*, 71 P.S. § 1011.

[8] Reference to "Superintendent of Public Instruction" is deemed to be a reference to Secretary of Education, pursuant to Section 3(b) of the Act of July 23, 1969, P.L. 181.

[9] Reference to "Department of Public Instruction" is deemed to be a reference to Department of Education, pursuant to Section 3(a) of the Act of July 23, 1969, P.L. 181.

photostat copies, in the distribution of printed matter issued by the [Department], in holding examinations for pre-professional certification, **and for other services rendered by such department**, and may alter such fees from time to time as may be desirable: **Provided, That the charge for such services shall not be in excess of the actual cost of such services: And provided further, That all fees collected . . . shall be paid into the State Treasury as part of the general fund**.

71 P.S. § 1011 (emphasis added).

> Section 1732-A of the CSL states:
>
> (a) Charter schools shall be subject to the following:
>
> (1) [Specified] Sections [of the School Code]
>
> [The Pennsylvania Fair Educational Opportunities Act.[10]]
>
> [An act providing for the use of eye protective devices by persons engaged in hazardous activities or exposed to known dangers in schools, colleges and universities.[11]]
>
> Section 4 of . . . An act providing scholarships and providing funds to secure [f]ederal funds for qualified students of the Commonwealth of Pennsylvania who need financial assistance to attend post[-]secondary institutions of higher learning, making an appropriation, and providing for the administration of this act.[12]
>
> [An act relating to drugs and alcohol and their abuse, providing for projects and programs and grants to educational agencies, other public or private agencies, institutions or organizations.[13]]
>
> [The Antihazing Law.[14]]
>
> (b) Charter schools shall be subject to [specified] provisions of [the Board of Education's Regulations.]

---

[10] Act of July 17, 1961, P.L. 776, *as amended*, 24 P.S. §§ 5001-5010.

[11] Act of July 19, 1965, P.L. 215.

[12] Act of January 25, 1966, P.L. 1546.

[13] Act of July 12, 1972, P.L. 765.

[14] Act of December 15, 1986, P.L. 1595.

(c)(1) The [S]ecretary may promulgate additional regulations relating to charter schools.

(2) The [S]ecretary shall have the authority and the responsibility to ensure that charter schools comply with [f]ederal laws and regulations governing children with disabilities. The [S]ecretary shall promulgate regulations to implement this provision.

24 P.S. § 17-1732-A.

## Count I

### A. Whether the Redirection Fee Conflicts with the CSL

In its Preliminary Objection, PDE first argues that the Cyber Charter Schools have not sufficiently pled a claim for declaratory judgment (Count I). Specifically, PDE contends the Redirection Fee is plainly authorized pursuant to Section 1 of The Administrative Code. PDE asserts that Section 1 of The Administrative Code grants the Department broad authority to assess reasonable fees for the services it renders when the Department determines in its discretion that certain people or organizations are benefitting unfairly from its services at the broader public's expense. PDE further avers that nothing in the CSL even purports to limit the authority granted to the Department under Section 1 of The Administrative Code. Thus, PDE claims that the Cyber Charter Schools have failed to allege a violation of the CSL.

The Cyber Charter Schools rejoin that the Redirection Fee is inconsistent with the CSL because it is not specifically authorized by the CSL, and it results in the charter schools receiving less money than the statutorily authorized amounts through no fault of their own. Further, the Cyber Charter Schools contend that the Department's stated authority for imposing the Redirection Fee, Section 1 of The

7

Administrative Code, does not apply because the Redirection Fee does not fall within its provisions.[15]

Section 1725-A(a)(2) of the CSL mandates that for "non-special education students," charter schools "**shall** receive for each student enrolled **no less than** the budgeted total expenditure per average daily membership of the prior school year." 24 P.S. § 17-1725-A(a)(2) (emphasis added); *see also* 24 P.S. § 17-1725-A(a)(3) (for "special education students" charter schools "**shall** receive for each student enrolled **no less than** the budgeted total expenditure per average daily membership of the prior school year[,]" plus an additional sum.) (emphasis added). The General Assembly stated in Section 1725-A(a)(5) of the CSL that, if the school district fails to make a payment, PDE "**shall deduct** [from state payments made to the school district] **and pay** [to the charter school] **the amount as documented by the charter school**[,]" thereby ensuring that the charter school "receive[s] . . . no less" than the amount owed. 24 P.S. § 17-1725-A(a)(5) (emphasis added). As a result of the Redirection Fee, however, for each school district that does not pay a charter school and the charter school seeks payment for services rendered, the charter school will receive $15.00 *less than* the total amount documented and requested by the charter school from PDE for that month.[16] This decreased amount received appears to be contrary to the CSL's plain language.

---

[15] Specifically, the Cyber Charter Schools maintain that because Section 1 of The Administrative Code is not specified in Section 1732-A of the CSL, it does not apply to charter schools. However, because Section 1732-A of the CSL appears to include only education-related statutes and regulations, this Court cannot hold that it is entirely exclusive of all other statutes, including but not limited to, Section 1 of The Administrative Code.

[16] Should all 500 school districts refuse to directly pay cyber charter schools, the invoices that would then be sent to PDE could potentially be 500 (districts) x 14 (cyber charter schools) x $15.00 (per redirection) x 12 (months) = $1,260,000.00 (per year in fees to cyber charter schools that would go to PDE each year). *See* Cyber Charter Schools' Br. at 18 n.2; *see also* 24 P.S. § 17-1725-A(a)(5) ("Payments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year.").

Further, Section 1 of The Administrative Code states that the Secretary "may fix and collect reasonable fees for certain **services rendered**[.]" 71 P.S. § 1011 (emphasis added). However,

> '[t]here is no air in Section 1725-A(a)(5) [of the CSL]. . . . There is **no discretion to exercise** . . . .' *Chester* [*Cmty. Charter Sch. v. Dep't of Educ.*], 996 A.2d [68,] 77-78 [(Pa. Cmwlth. 2010) (*Chester I*)] (emphasis added). Rather, '[t]he Department has a **mandatory**, **non-discretionary duty** to withhold subsidies to a school district based upon the estimated amount documented by the charter school.' *Id.* at 78 (emphasis added).

*Kipp Phila. Charter Sch. v. Dep't of Educ.*, 161 A.3d 430, 438 (Pa. Cmwlth. 2017), *aff'd*, 185 A.3d 984 (Pa. 2018). The list of services articulated in Section 1 of The Administrative Code are discretionary in nature, whereas the Department's statutory mandate to redirect funds from the school district to a charter school which the district has not paid for services rendered is mandatory and remedial in nature. Indeed, Section 1725-A(a)(5) of the CSL provides "**the exclusive remedy for underpayment**(**s**) **to a charter school**[.]" *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 44 A.3d 715, 722 (Pa. Cmwlth. 2012) (*Chester II*) (emphasis added). Clearly, fulfilling a "mandatory non-discretionary duty," *Kipp*, 161 A.3d at 438 (quoting *Chester I*, 996 A.2d at 78), as an "exclusive remedy," *Chester II*, 44 A.3d at 722, cannot be equated to the services specified in Section 1 of The Administrative Code, i.e., "the distribution of lantern slides and films, [] furnishing certified copies, or photographic or photostat copies, [] the distribution of printed matter issued by the [Department.]" 71 P.S. § 1011. Accordingly, it is not clear as the Department asserts that Section 1 of The Administrative Code authorizes the Redirection Fee.

**B. Whether the Redirection Fee Violates the Separation of Powers Doctrine**

PDE contends that the Redirection Fee does not violate the separation of powers doctrine because the General Assembly, not the Department, drafted and adopted Section 1 of The Administrative Code. The Cyber Charter Schools rejoin that the Redirection Fee violates the separation of powers doctrine because the General Assembly did not grant the Department statutory authority to charge a Redirection Fee for simply fulfilling its mandatory duties to redirect funds when a school district does not pay a charter school.

The Pennsylvania Supreme Court has explained:

> The rationale underlying this separation of powers is that it prevents one branch of government from exercising, infringing upon, or usurping the powers of the other two branches. Thus, to 'avert the danger inherent in the concentration of power in any single branch or body,' no branch may exercise the functions delegated to another branch.

*Renner v. Court of Common Pleas of Lehigh Cnty.*, 234 A.3d 411, 419 (Pa. 2020) (quoting *Jefferson Cnty. Court Appointed Emps. Ass'n v. Pa. Lab. Rels. Bd.*, 985 A.2d 697, 706-07 (Pa. 2009)).

By drafting Section 1 of The Administrative Code, the General Assembly authorized the charging of fees for certain services rendered. As explained above, such services do not include fulfilling a mandatory, non-discretionary duty in response to an exclusive remedy. *See Kipp*; *Chester II*. Because it appears that there is no authority for the Department's Redirection Fee, it is not clear that the Department's imposition of the Redirection Fee is not an usurpation and infringement upon the legislative branch, and thus not a violation of the separation of powers doctrine.

## C. Whether the Department Abused its Discretion

PDE asserts that the Department's assessment of the Redirection Fee is not an abuse of discretion. In addition, PDE avers that the Redirection Fee's purpose is to recoup the costs of thousands of staff time hours the Department incurs from implementing the CSL when it redirects payments from school districts to charter schools, and the Cyber Charter Schools do not allege any facts that contradict the patently reasonable basis for the Redirection Fee.

The Cyber Charter Schools respond that the Redirection Fee is an abuse of discretion because the Department has chosen to impose the Redirection Fee on the charter schools, and not the school districts whose failure to pay the charter schools results in the charter schools needing to request the funds' redirection.[17]

> '[A]n abuse of discretion occurs when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.' *B.B. v. Dep*[*'t*] *of Pub*[.] *Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (internal quotation marks omitted)[.]

*Pa. Tpk. Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 560-61 (Pa. Cmwlth. 2020) (emphasis added).

This Court has explained that it was "the intention of the legislature to place the burden on the school district to fund charter schools in the correct amount." *Chester I*, 996 A.2d at 78. Further,

> [i]t is clear . . . that as between the school district and the charter school, the legislature has decided that more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a

---

[17] During oral argument, PDE's counsel acknowledged that the Department could not impose the Redirection Fee on a school district because it had no such authority.

> delay in the receipt of the state subsidy to which it is entitled.

*Id.*

Pursuant to Section 1725-A(a)(5) of the CSL, "[i]f a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the district . . . ." 24 P.S. § 17-1725-A(a). Thus, the charter schools may not avoid the Redirection Fee if they wish to be paid. The school districts, however, can avoid the costs the Department seeks to recoup through the Redirection Fee by paying the charter schools their statutorily mandated funds. Because it appears that the General Assembly's intent was for "the burden" to be placed on school districts "to fund [] charter schools," *Chester I*, 996 A.2d at 78, and that "more harm will befall a charter school . . . than [] a school district" to go without funds for any time period, *id.*, it may be "manifestly unreasonable" for the Department to charge the charter schools a fee for requesting payment for services rendered, rather than the school districts, which can, as the legislature determined, more aptly afford such fees, and more importantly, avoid the Redirection Fee from the outset. *Pa. Tpk. Comm'n*, 230 A.3d at 560 (quoting *B.B.*, 118 A.3d at 485). Accordingly, it is not clear that the Department's Redirection Fee is not an abuse of discretion.

## D. Whether the Redirection Fee is Unconstitutionally Vague

PDE maintains that the Redirection Fee is not unconstitutionally vague because the Department's announcement of the Redirection Fee clearly describes the conduct that would cause the Department to assess the Redirection Fee.

The Cyber Charter Schools maintain that the Redirection Fee is unconstitutionally vague because there are numerous questions left unanswered by the Department's new fee policy, including when the Redirection Fee will be

enforced, the consequences if the charter school refuses to pay the Redirection Fee, and whether the Redirection Fee may be arbitrarily increased in the future without notice to the charter schools.

This Court has declared: "A statute or regulation is unconstitutionally vague when its terms are not sufficiently specific to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Nelson v. State Bd. of Veterinary Med.*, 863 A.2d 129, 138 (Pa. Cmwlth. 2004). Here, the "conduct" in question - seeking payment for services rendered within the stated time period - is statutorily mandated. *Id.* Thus, the Department assesses the Cyber Charter Schools a fee merely for complying with the CSL. Because other than putting the Cyber Charter Schools on notice that they are now subject to the Redirection Fee, it appears that the Department has provided no other pertinent information, such as when the Redirection Fee is due and/or what the penalty is for failure to pay it. Accordingly, given that the Department may not have informed the Cyber Charter Schools, *inter alia*, when the Redirection Fee is due and what "penalties" they are liable for if payment is late or they do not pay it, it is not clear that the Redirection Fee is not "unconstitutionally vague." *Id.*

## E. Conclusion

Because it appears that Section 1 of The Administrative Code does not authorize the Redirection Fee,

> [i]t is certainly not clear and free from doubt, under both [the CSL and The Administrative Code], that the law will not sustain [the Cyber Charter Schools'] claim for declaratory relief. Therefore, [PDE's] [P]reliminary [O]bjection[] in the nature of a demurrer to [the Cyber Charter Schools'] claim for declaratory relief must be overruled.

*P.J.S. v. Pa. State Ethics Comm'n*, 669 A.2d 1105, 1112 (Pa. Cmwlth. 1996).

13

**Count II**

With respect to Count II, in its Preliminary Objection, PDE does not specifically argue that the Cyber Charter Schools have not sufficiently pled a claim for injunctive relief. Rather, PDE contends that because the Cyber Charter Schools do not state a viable claim for relief, both counts should be dismissed. The Cyber Charter Schools rejoin that they have asserted a viable claim for injunctive relief on all of the grounds addressed above: the Department's Redirection Fee is inconsistent with the CSL; it violates the separation of powers doctrine; it is an abuse of discretion; and it is unconstitutionally vague and invalid.

> The law is well settled:
>
> An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.

*Kipp*, 161 A.3d at 442 (quoting *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted)). "Ultimately, the grant or denial of a permanent injunction will turn on whether . . . the party seeking the injunction established a clear right to relief as a matter of law." *City of Phila. v. Shih Tai Pien*, 224 A.3d 71, 78 n.3 (Pa. Cmwlth. 2019) (quoting *Buffalo Twp. v. Jones*, 813 A.2d 659, 664 n.4 (Pa. 2002)). As explained above, this Court concludes that the Cyber Charter Schools have sufficiently pled a viable claim for relief. "Thus, we overrule [PDE's] [P]reliminary [O]bjection[] to [the Cyber Charter School's] claim for a permanent injunction, because it is *not* clear that [the Cyber Charter Schools] will be unable to establish facts sufficient to justify injunctive relief." *P.J.S.*, 669 A.2d at 1113.

## **Conclusion**

For all of the above reasons, PDE's Preliminary Objection is overruled.


_____
ANNE E. COVEY, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Virtual Charter School; :
Pennsylvania Leadership Charter :
School; Agora Cyber Charter School; :
ASPIRA Bilingual Cyber Charter :
School, :
                         Petitioners :
                                :
                v. :
                                :
Commonwealth of Pennsylvania, :
Department of Education; The Secretary :
of Education, Pedro A. Rivera, (In his :
Official Capacity), : No. 561 M.D. 2019
                    Respondents :

## O R D E R

AND NOW, this 21st day of December, 2020, the Department of Education's (Department) and the Department Secretary Pedro A. Rivera's (collectively, PDE) Preliminary Objection in the nature of a Demurrer is OVERRULED. PDE is directed to file an answer to Pennsylvania Virtual Charter School, Pennsylvania Leadership Charter School, and Agora Cyber Charter School's Petition for Review within 30 days of the date of this Order.

_____
ANNE E. COVEY, Judge