IN THE COMMONWEALTH COURT OF PENNSYLVANIA

KIPP Philadelphia Charter Schools,   :
                     Petitioner   :
                                    :
              v.            :
                                      :

Commonwealth of Pennsylvania,   :
Department of Education; and Pedro A.  :
Rivera, in his official capacity as   :
Secretary of Education,   :   No. 52 M.D. 2016
              Respondents   :   Argued: December 14, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge


OPINION BY
JUDGE COVEY                           FILED: May 1, 2017


        Before the Court is KIPP Philadelphia Charter Schools' (Charter Schools)[1] Application for Summary Relief (Application) seeking payment from the

---

[1] KIPP Philadelphia Charter Schools include: KIPP Philadelphia Charter School, KIPP Philadelphia Elementary Charter School, KIPP Dubois Collegiate Academy and KIPP West Philadelphia Preparatory Charter School. *See* Petition for Review in the Nature of an Appeal and a Complaint for Direct Payment, Mandamus, Declaratory and Injunctive Relief at 4.

    In the Charter Schools' Answer to Respondents' Preliminary Objections, the Charter Schools explained:

> As of the date of the redirection request, KIPP Philadelphia Elementary Academy, KIPP Dubois Collegiate Academy, and KIPP Philadelphia Charter School were under the same charter and management. Together with KIPP West Philadelphia Preparatory Charter School (which has a separate charter but is under the same management), these schools are collectively referred to as the KIPP Philadelphia [Charter] Schools.

Commonwealth of Pennsylvania, Department of Education (Department) and Pedro A. Rivera, in his official capacity as Secretary of Education (Secretary) (collectively, Respondents) of reconciliation monies for the 2014-2015 school year pursuant to Section 1725-A of the Charter School Law (CSL).[2] Also before the Court are Respondent's preliminary objections (Preliminary Objections) to the Charter Schools' Petition for Review in the Nature of an Appeal and a Complaint for Direct Payment, Mandamus, Declaratory and Injunctive Relief (Complaint).

## I. Background

"Pursuant to [S]ection 1725-A of the . . . CSL . . . , a school district that has any resident students enrolled in a charter school must pay the charter school for each enrolled student." *Waslow v. Pa. Dep't of Educ.*, 984 A.2d 575, 576 (Pa. Cmwlth. 2009). Section 1725-A(a)(5) of the CSL requires that "[p]ayments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year." 24 P.S. § 17-1725-A(a)(5). Under former Governor Thomas W. Corbett's administration,[3] the Department permitted charter schools to conduct end-of-year reconciliations and then seek to have any underfunded amounts withheld by Respondents from school districts' state subsidies pursuant to Section 1725-A(a)(5) of the CSL, which provides:

> If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall

---

Charter Schools' Ans. to Prelim. Obj. at 1-2 (footnote omitted). "For the 2014-2015 school year, the charter for 'KIPP Philadelphia Charter School' included three schools: KIPP Philadelphia Elementary Academy, KIPP Philadelphia Charter School, and KIPP Dubois Collegiate Academy. Subsequently, the structure changed." *Id.* at 1 n.1.

[2] Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17-1725-A. The CSL amended Article XVII-A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1-101 – 27-2702.

[3] Thomas W. Corbett served as Pennsylvania Governor from January 18, 2011 to January 20, 2015.

2

deduct the estimated amount, as documented by the charter school, from any and all [s]tate payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17-1725-A(a)(5).[4]

On July 14, 2015, the Charter Schools submitted a reconciliation report to the Department for $425,658.74 they claimed they were owed by the School District of Philadelphia (District) for the 2014-2015 school year. *See* Complaint Ex. A. On January 8, 2016, the Department notified Pennsylvania charter schools and school districts (January 2016 Notice):

---

[4] Section 1725-A(a)(6) of the CSL states:

> Within thirty (30) days after the [S]ecretary makes the deduction described in [Section 1725-A(a)](5) [of the CSL], a school district may notify the [S]ecretary that the deduction made from [s]tate payments to the district under this subsection is inaccurate. The [S]ecretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

24 P.S. § 17-1725-A(a)(6).

The Act of July 13, 2016, P.L. 716 (Act 86), amended Section 1725-A(a)(5) of the CSL by adding:

> No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the school district for the previous school year. If a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the [school] district after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

24 P.S. § 17-1725-A(a)(5).

In 2012, the Pennsylvania Commonwealth Court [in *Chester Community Charter School v. Pennsylvania Department of Education*, 44 A.3d 715 . . . [(Pa. Cmwlth. 2012) (*Chester II*)]] determined that the mandatory withholding requirements of [S]ection 1725-A(a)(5) of the [CSL] apply only to claims on current year funding. The prior administration delayed the implementation of the [C]ourt's decision.

[**The Department**] cannot contravene the law, and therefore **will cease the end-of-year reconciliation process**. Instead, **charter schools may work directly with resident school districts to reconcile each school year's tuition payments** based on the number of days that each student was enrolled in the charter school.

Charter schools may continue to submit invoices to [the Department] for deduction of estimated amounts related to current school year enrollment. However, pursuant to the law, charter schools must first provide resident school districts with an invoice and must have provided the resident school district with sufficient time and opportunity to make a payment before requesting subsidy redirection from [the Department]. Therefore, [**the Department**] **will only process charter school withholding requests that relate to the enrollment of students in the current school year**.

Complaint Ex. B (emphasis added). Effectively, the Department declared it would only redirect delinquent school districts' funding under Section 1725-A(a)(5) of the CSL during the current fiscal year and a school district's failure to pay outstanding prior-year balances would be a matter for the charter schools and the school districts to resolve.

On January 8, 2016, the Charter Schools made an email inquiry to the Department regarding the status of its fund redirection request. By January 20, 2016 email, the Department notified the Charter Schools that the Department would not pay the Charter Schools' 2014-2015 reconciliation. *See* Complaint Ex. C.

4

On February 8, 2016, the Charter Schools filed the Complaint seeking: (1) an order directing the Department and/or the Secretary to pay the Charter Schools $425,658.74 owed by the District for the 2014-2015 school year (Count I); (2) a mandamus order directing the Secretary to withhold the District's state funds until the Charter Schools are paid in full, redirect the Charter Schools' overdue payments, make all outstanding payments to the Charter Schools and pay the Charter Schools all costs and attorney's fees (Count II); (3) a declaration from this Court that the Department is in violation of the CSL's mandatory fund withholding provisions, that *Chester II* does not prevent its 2014-2015 school year claims, that the Department's January 8, 2016 statement that *Chester II* precludes it from withholding the Charter Schools' funds is incorrect, that the Department must withhold the funds as mandated by the CSL, and that the Charter Schools are entitled to costs and attorney's fees (Count III); (4) a permanent injunction from Respondents delaying or refusing the Charter Schools' withholding requests and from refusing to make future reconciliation payments (Count IV); and, (5) to the extent that the January 2016 Notice is the Department's final determination of the Charter Schools' rights to funds for the 2014-2015 school year, an appeal therefrom (Count V).

On March 7, 2016, the Department issued a letter to charter schools, including the Charter Schools (March 2016 Notice), clarifying:

> On January 8, 2016, the [Department] notified charter schools and school districts that it would no longer be performing an end-of-year reconciliation process. However, prior to issuing this notification, the Department received documentation from charter schools for the 2014-2015 school year. As a result, the Department is providing school districts with the information received prior to January 8, 2016. One or more charter schools have prepared the enclosed report(s) related to payments made and the amount claimed to be due for students enrolled during the 2014-2015 school year.

5

> As indicated in its previous communication, the Department will not be withholding funds related to the documentation submitted by charter schools because there are no 2014-[20]15 funds from which to withhold. **This matter will proceed to an administrative hearing** as prescribed by [*Chester II*].
>
> As a result of the record established through the administrative hearing process, the Secretary will then issue a decision. Since there are no 2014-[20]15 funds from which to withhold, the manner in which funds are paid based on the Secretary's decision will be decided by the respective charter school and school district.

Application Ex. A (emphasis added).

On March 14, 2016, Respondents filed their Preliminary Objections to the Complaint arguing that: (1) the Charter Schools failed to exhaust their statutory remedies since the matter has not been submitted to a hearing (Objection I); (2) this Court lacks jurisdiction because the January 2016 Notice was not a final, appealable order (Objection II); (3) not all of the Charter Schools have a direct interest and, thus, lack standing (Objection III); (4) Complaint Counts I through IV fail to state claims upon which relief may be granted because, *inter alia*, Respondents have sovereign immunity (Objections IV-IX); and, (5) the Charter Schools failed to join necessary parties (Objection V).

On April 13, 2016, the Charter Schools filed the Application seeking judgment in its favor and against Respondents because Respondents have denied its reconciliation request for the 2014-2015 school year in violation of Section 1725-A(a)(5) of the CSL.[5] On April 14, 2016, the Department notified the Charter Schools and the District that there were no funds from which payments could be made, and the parties were entitled to a hearing. *See* Respondents' Ans. to Application Ex. 1.

___

[5] On April 13, 2016, the Charter Schools also filed preliminary objections to Respondents' preliminary objections which were overruled by this Court. *See* May 5, 2016 order and Respondents' May 10, 2016 verification filing.

On April 27, 2016, Respondents filed an answer to the Application, in which they claimed that withholding can only be made against available funds appropriated for the subject school year, and that Respondents are not obligated to pay anything to the Charter Schools pending the hearing process.

## II. Summary Relief

> [Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.)] 1532(b) provides that '[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.' Pa.R.A.P. 1532(b). 'An application for summary relief is properly evaluated according to the standards for summary judgment.' *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a[n application] for summary relief, the **evidence must be viewed in the light most favorable to the non-moving party** and **the court may enter judgment only if**: (1) there are **no genuine issues of material fact**; **and** (2) the **right to relief is clear as a matter of law**. *N*[*w.*] *Youth Serv*[*s.*], *Inc. v. Dep*[*'t*] *of Pub*[*.*] *Welfare*, 1 A.3d 988, 990 n.1 (Pa. Cmwlth. 2010).

*Flagg v. Int'l Union, Sec., Police, Fire Prof'ls of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016) (emphasis added).

### A. Genuine Issues of Material Fact

At December 14, 2016 oral argument before this Court, counsel for the Charter Schools represented, and Respondents acknowledged, that under Governor Corbett's administration, the Department's practice was to allow charter schools to conduct end-of-year reconciliations and, based upon the amounts charter schools documented they were owed, the Department would withhold state funding from delinquent school districts in the relevant amounts in accordance with Section 1725-A(a)(5) of the CSL. The Department deducted funds owed from prior-year budgets

7

from future school district basic education subsidies. *See Sch. Dist. of Phila. v. Dep't of Educ.,* 41 A.3d 222, 225 (Pa Cmwlth. 2012), *rev'd on other grounds*, 92 A.3d 746 (Pa. 2014) (the Department withheld past due amounts "from the [school d]istrict's next Basic Education Subsidy").

Notwithstanding this Court's 2012 *Chester II* decision, the Department continued this reconciliation practice for the 2012-2013 and 2013-2014 school years. The Charter Schools made its reconciliation request with supporting documentation just days after the 2014-2015 school year ended. At that time, the Charter Schools were not aware of any change to the Department's end-of-year reconciliation procedure. The Charter Schools' first notice of the process modification was the Department's January 2016 Notice. Further, the Charter Schools had no notice that the matter was being submitted to a hearing until it received the Department's March 2016 Notice. However, to date, the Department has not scheduled or conducted a hearing. Moreover, the Department has not withheld the funds the Charter Schools requested in accordance with Section 1725-A(a)(5) of the CSL,[6] nor has the District disputed the requested reconciliation amounts.[7]

---

[6] The July 13, 2016 amendment to Section 1725-A(a)(5) of the CSL reflects the General Assembly's intent that Respondents should not be involved in the reconciliation process unless and until a dispute arises between the charter school and a school district. *See* Act of July 13, 2016, P.L. 716 (Act 86). Notably, however, in sharp contrast to Respondents' attempts to limit reconciliation to the current school year, the General Assembly memorialized Respondents' historical practice and declared in Act 86 that a charter school has until October 1st following the applicable school year to submit final reconciliation documents to a school district and, if the school district fails to pay the charter school, "the [S]ecretary shall deduct and pay" the charter school from the school district's subsidies "for the fiscal year in which the final documentation of payment was submitted to the school district . . . ." 24 P.S. § 17-1725-A(a)(5).

[7] We acknowledge Respondents' claim that they "are without sufficient information to determine the truth or veracity of what amount, if any, was owed by the [District] to [the Charter Schools.]" Respondents' Ans. to Application at 2-3. However, since Respondents have yet to withhold the funds, there is nothing for the District to dispute. *See* Section 1725-A(a)(6) of the CSL.

Based on the foregoing, there are no genuine issues of material fact that would preclude this Court from deciding the Charter Schools' Application.

## B. Clear Right to Relief

The Charter Schools' Complaint seeks declaratory, mandamus and injunctive relief against Respondents.[8]

### 1. Declaratory Judgment

The Charter Schools aver that Respondents are in violation of the CSL's mandatory fund withholding provisions, that *Chester II* does not prevent its 2014-

---

[8] Respondents contend that "this Court cannot review this matter in its original jurisdiction nor in its appellate jurisdiction," since its original jurisdiction is limited to actions outside its appellate jurisdiction, and the CSL affords this Court appellate jurisdiction only after the Charter Schools fully exhaust their administrative remedies (*i.e.*, receives a final order issued by a hearing examiner after a hearing). Respondents' Br. in Support of Preliminary Objections at 8; *see also* Respondents' Br. in Support of Preliminary Objections at 7-8.

Indeed, under Section 761(a)(1) of the Administrative Agency Law, 42 Pa.C.S. § 761(a)(1), **this Court has original jurisdiction to decide challenges to the Department's actions or inactions**. Moreover, Section 702 of the Administrative Agency Law specifically provides that "[a]**ny person aggrieved by an adjudication** of a Commonwealth agency who has a direct interest in such adjudication **shall have the right to appeal therefrom** to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S. § 702 (emphasis added). Adjudications include "[a]**ny final** order, decree, **decision**, **determination or ruling** by an agency **affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties** to the proceeding in which the adjudication is made." 2 Pa.C.S. § 101 (emphasis added). However, "[w]**hen an agency's** decision or **refusal to act leaves a complainant with no other forum** in which to assert his or her rights, privileges, or immunities, **the agency's act is an adjudication**." *Ruiz v. Attorney Gen. of Pa.*, 789 A.2d 372, 375 (Pa. Cmwlth. 2001) (emphasis added).

Were we to adopt Respondents' position that this Court lacks any jurisdiction whatsoever to hear this matter, the Charter Schools' causes of action would be hamstrung for as long as Respondents choose not to act. Because the Department's January 2016 Notice and its failure to conduct a hearing pursuant to the CSL have left the Charter Schools without a means to assert their statutory rights, this Court has jurisdiction over their claims for declaratory, mandamus and injunctive relief.

9

2015 school year claims, and that the Department's reliance on the January 2016 Notice that *Chester II* precludes it from withholding the Charter Schools' funds is incorrect. The Charter Schools also seek

> an order from this Court that:
>
> (1) [Respondents are] in violation of [their] mandatory obligations under the CSL by failing to withhold the funds sought by [the Charter Schools];
>
> (2) this Court's decision in *Chester II* does not prevent Respondents from withholding state payments where the claim was made after the requisite school year;
>
> (3) [Respondents'] statement in the January 8, 2016 email that the CSL or *Chester II* preclude [them] from withholding the funds sought by [the Charter Schools] is incorrect;
>
> (4) [Respondents] must withhold the funds sought by [the Charter Schools] and pay them to [the Charter Schools] in order for Respondents to be in compliance with their mandatory obligations under the CSL[.]

Complaint at 20. The Charter Schools also request "costs, attorney's fees, and such other relief as the Court shall deem appropriate for Respondents' failure to comply with the CSL." Complaint at 20.

Respondents claim that Section 1725-A(a)(5) of the CSL requires only that Respondents deduct and withhold any and all of the District's state payments, but does not obligate Respondents to pay anything to the Charter Schools pending the hearing process. Moreover, based on *Chester II*, withholding for purported underfunding "can only be made against available funds appropriated for that school year." Respondents' Ans. to Application at 5.

Section 7532 of the Declaratory Judgments Act provides: "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42

10

Pa.C.S. § 7532. Section 7541 of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541.

However, declaratory judgment is appropriate **only** where there exists an actual controversy. *Allegheny Cnty. Constables Ass'n, Inc. v. O'Malley*, 528 A.2d 716 (Pa. Cmwlth. 1987). "An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth. 2010) (*Chester I*). "Granting or denying a petition for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

The General Assembly mandated in Section 1725-A(a)(5) of the CSL that "[i]f a school district fails to make payment to the charter school, **the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the [school] district** after receipt of documentation from the charter school[.]" 24 P.S. § 17-1725-A(a)(5) (bold and underline emphasis added). This Court has declared that "[t]here is no air in Section 1725-A(a)(5) [of the CSL]. . . . There is **no discretion to exercise** . . . ." *Chester I*, 996 A.2d at 77-78 (emphasis added). Rather, "[t]he Department has a **mandatory, non-discretionary duty** to withhold subsidies to a school district based upon the estimated amount documented by the charter school." *Id.* at 78 (emphasis added). Therefore,

> [u]nder [Section 1725-A(a)(5) of the CSL], if a school district does not make its required statutory payments, the Secretary, upon notification by the affected charter school, shall deduct the estimated amount as documented by the

11

charter school from any and all state payments made to the school district. If a school district refuses to transfer funds to a charter school, the Secretary has no discretion to decline to withhold the estimated amount of payment from the charter school. Thus, the Secretary has a mandatory, non-discretionary obligation to deduct the estimated amount of payment due a charter school by a school district upon submission of supporting documentation by the charter school. [Under Section 1725-A(a)(6) of the CSL a] school district has 30 days to challenge the accuracy of the estimated amount withheld by the Secretary and to require the Secretary to provide the school district with an opportunity to be heard on the estimated deduction.

*Chester II*, 44 A.3d at 719-20.

Despite this Court's acknowledgement in *Chester II* that Section 1725-A(a) of the CSL represents the Charter Schools' exclusive remedy against the District for the underfunded amounts, and that the Charter Schools submitted a reconciliation request and supporting documentation, **the Secretary has not deducted and withheld or paid the outstanding funds to the Charter Schools, nor scheduled a hearing**. Under the circumstances, this matter presents imminent and inevitable litigation that a declaration from this Court would resolve for the Charter Schools and, perhaps, the limited number of similarly-situated charter schools. *Chester I*.

Respondents assert that the Secretary may only deduct, withhold and pay monies allocated for the current school year, and that a hearing may be held before Respondents withhold funds, was based solely upon this Court's *Chester II* holding. In *Chester II*, the Chester Community Charter School (CCCS) filed a petition in this Court to compel the Department and then-Secretary Gerald L. Zahorchak to withhold Chester Upland School District's (Chester Upland) state subsidies because Chester Upland used an improper special education student calculation rate between September 1998 and September 2007 and, thus, underfunded CCCS by $7,490,171.75. Chester Upland responded, *inter alia*, that CCCS' claims for past

school years were barred as untimely filed.[9]  CCCS filed an application for summary relief.

In denying the summary relief application, this Court expressly held:

Under Section 1725-A(a)(5) [of the CSL], challenges are made by the charter school to one or all of the 12 equal monthly payments calculated by the school district based on the budgeted education expenditures within the operating school year.  Because that ties the challenge to the withholding to a particular school year, **withholding for purported underfunding can only be made against funds appropriated in the school year for which payment is authorized to withhold disputed amounts**.

Our previous holding in *Chester I* [was] that Sections 1725-A(a)(5) and (6) [of the CSL] provide the exclusive remedy for underpayment(s) to a charter school, and our holding in this case [is] that **withholding can only be made against appropriations for the school year in question** . . . . [Thus, w]hen there are no funds to withhold, the Secretary must still acknowledge the receipt of the claim for underpayment from the charter school, state that there are no appropriated funds for the year in which the charter school claim can be withheld, and because there is no 'trigger' for the School District to appeal, the Secretary must inform the charter school that the claim will go directly to a hearing. In keeping with the process under Section 1725-A(a)(6) [of the CSL] that the school district has to take the appeal, the school district still has the burden to prove the claim is invalid.  Of course, the school district can defend the purported claim based on the timeliness or validity of the claim.

Because we have previously held that the administrative remedy is the exclusive remedy to hear disputes regarding payments made to charter schools by school districts, this court will not address the merits of the claims or whether the claims were untimely filed.  Accordingly, the application for summary relief is denied.  The Secretary is

---

[9] The *Chester II* Court did not address the timeliness of CCCS' claims because it had a remedy available in the pending hearing.

13

to hold a hearing, previously held in abeyance, in accordance with this opinion.

*Chester II*, 44 A.3d at 722-23 (emphasis added; footnote omitted). However, *Chester II* is clearly distinguishable from the current case and is limited to its particular facts.

Initially, although Respondents purportedly applied *Chester II*'s legal conclusions, they failed to satisfy the conditions the *Chester II* Court established. Specifically, Respondents did not, as the *Chester II* Court prescribed, "**acknowledge the receipt of the claim** for underpayment from the charter school, [**and/or**] **state that there are no appropriated funds** for the year in which the charter school claim can be withheld." *Chester II*, 44 A.3d at 722 (emphasis added). Rather, Respondents in this case issued the **general January 2016 Notice of its policy change to all Pennsylvania charter schools** and school districts more than **three months after the Charter School's request**. It was not until **another four months later**, on April 14, 2016 (the day after the Charter Schools filed the instant Application), that the Department issued specific notice to the Charter Schools and the District that there are no funds from which payments could be made, and these particular parties were entitled to a hearing. *See* Respondents' Ans. to Application Ex. 1. However, the Department has never scheduled a hearing. Under the circumstances, **Respondents' failure to adhere to *Chester II*'s clear mandates eviscerates their argument that they followed *Chester II* and that it controls in the resolution of this matter**.

**Moreover, the fact that *Chester II* did not address timeliness** or the merits of CCCS' claims also distinguishes that case from the instant matter. The Court finds it significant that, in ***Chester II*,** CCCS sought underpayment reconciliations **up to nine years after the applicable fiscal years**. In the case at bar, the Charter Schools submitted their 2014-2015 documentation **only days after the applicable school year ended**, in accordance with Respondents' previously-

14

permitted practice. But for the Commonwealth's budget impasse,[10] Respondents could have, as they had repeatedly done in the years following the *Chester II* decision, withheld the underfunded amounts from the next fiscal year's appropriations.[11] Instead, long after the Charter Schools submitted its reconciliation requests, Respondents decided to and did **retroactively** apply a previously-undocumented, significant policy change.

In addition, Section 1921(b) of the Statutory Construction Act of 1972 requires: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The General Assembly clearly stated in Section 1725-A(a)(6) of the CSL that a hearing will be held only upon a school district's request whose funds have been withheld by Respondents. This Court has since declared that "the [CSL] Section 1725-A(a)(6) hearing **is intended to cover the accuracy of the Secretary's deduction** of a [school district's] subsidy . . . ." *Chester I*, 996 A.2d at 78 (emphasis added). **Where, as here, the Secretary has not withheld a deduction, a CSL Section 1725-A(a)(6) hearing would be a nullity**. There being no circumstance presented here under which the Secretary could not withhold funds from the District's next fiscal year once the budget impasse resolved, **the *Chester II* Court's hearing process modification is inapposite**.

Further illustrative of Respondents' misguided application of *Chester II* to this case is that Act 86 has since amended Section 1725-A(a)(5) of the CSL,[12]

---

[10] The Commonwealth faced a historic 2015-2016 budget impasse that nearly forced Pennsylvania schools to close and did not end until March 23, 2016.

[11] There were no funds Respondents could withhold and/or pay to the Charter Schools, either from the 2014-2015 or 2015-2016 school year appropriations until the Commonwealth's 2015 budget was finally passed in March 2016.

[12] The Act 86 amendment removed Respondents from the reconciliation process, unless and until a school district fails to pay a charter school, as Respondents intended to do by their January 2016 Notice.

thereby specifically requiring that if the Secretary has to deduct and pay funds from school districts' subsidies, they **would be withheld** "**from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district** of residence." 24 P.S. § 17-1725-A(a)(5) (bold and underline emphasis added). We acknowledge that Act 86's amendment became effective July 13, 2016 and was not retroactive.[13] However, based upon our strict reading of the amendment, Act 86 reflects the General Assembly's intent (as carried out by Respondents for years after *Chester II* was decided) that, if a charter school's reconciliation paperwork is submitted within the school year, the deduction will be made from that fiscal year and, if the documentation is submitted after the end of the school year (*i.e.*, in the next fiscal year), the deduction will be made from school district appropriations for the next fiscal year. Further, since Act 86 did not amend Section 1725-A(a)(6) of the CSL, it is clear that the General Assembly intended that a hearing will be held **only** upon request by a school district whose funds have been withheld by Respondents.

Our decision herein will have a limited effect on a finite number of charter schools and school districts. Assuming, *arguendo*, that Respondents effectuated a valid policy change with its January 2016 Notice, it could not conceivably be effective any sooner than when it was issued on January 8, 2016. Act 86's amendment to Section 1725-A(a)(5) of the CSL controls all reconciliation requests submitted as of July 13, 2016. Therefore, our holding is limited to the Charter Schools, and similarly-situated charter schools that sought to reconcile school district payments since the end of the 2014-2015 school year.[14]

---

[13] The July 13, 2016 amendment to Section 1725-A(a)(5) of the CSL was immediately effective and was not expressly made retroactive. *See* Section 215(2) of Act 86.

[14] Act 86 permitted charter schools to submit reconciliation requests for the 2015-2016 school year to school districts until October 1, 2016.

16

Having concluded that *Chester II* is not controlling in this case and, thus, does not prohibit the Charter Schools' 2014-2015 school year reconciliation claims, we declare that Respondents are in violation of the CSL's mandatory fund withholding provisions.

### 2.    Mandamus

The Charter School also seeks

an order of preemptory mandamus as follows:

(1) directing [Respondents] to withhold all further state payments to school districts until [the Charter Schools'] reconciliation request is paid in full in accordance with Section 1725-A of the CSL;

(2) directing [Respondents] to redirect the overdue payment in the full amount of [the Charter Schools'] claim in accordance with Section 1725-A of the CSL;

(3) ordering [Respondents] to direct the school districts to make all outstanding payments in full to [the Charter Schools'] or be in contempt of this Court[.]

Complaint at 17.  The Charter Schools also request an order "directing [Respondents] to pay to [the Charter Schools] all costs, attorney's fees, and such other relief as the Court shall deem appropriate."  Complaint at 17.

> A writ of mandamus is an extraordinary remedy used to compel official performance of a ministerial act when a **petitioner establishes a clear legal right**, the respondent has a corresponding duty, and the petitioner has no other adequate remedy at law.  The purpose of mandamus is to enforce rights that have been clearly established.

*Tindell v. Dep't of Corr.,* 87 A.3d 1029, 1034 (Pa. Cmwlth. 2014) (citation omitted; emphasis added).

17

Section 1725-A(a)(5) of the CSL, and Respondents' practice thereunder, established a clear legal right in the Charter Schools that triggered Respondents' duty to withhold funds from the District's 2015-2016 appropriations, which Respondents refused to do. In addition, Respondents have continued to fail to schedule a hearing. Instead, on January 8, 2016, Respondents retroactively eliminated any potential 2014-2015 school year reconciliation claims, leaving the Charter Schools without any remedy at law. Accordingly, the Charter Schools are entitled to mandamus relief.

### 3. Injunctive Relief

> An injunction that commands the performance of an affirmative act, a 'mandatory injunction,' is the rarest form of injunctive relief and is often described as an extreme remedy. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.

*Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted). Each of the above requirements must be satisfied before a mandatory injunction will be ordered. *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619 (Pa. Cmwlth. 2011).

In the instant case, there is a strong showing that the District had a legal obligation to fully fund the Charter Schools for the 2014-2015 school year, but failed to do so, and Respondents refused to reconcile payments due to the Charter Schools. 24 P.S. § 17-1725-A(a). "A violation of [a] statute constitutes irreparable harm." *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016). Denying the injunction

18

will result in greater harm to the Charter Schools than to the District or Respondents. This Court in *Chester I* recognized:

> It is clear, . . . that as between the school district and the charter school, the legislature has decided that **more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a delay in the receipt of the state subsidy** to which it is entitled.

*Id.* at 78 (emphasis added). The injunction will restore the status quo between the Charter Schools and the District. Accordingly, the Charter Schools are entitled to injunctive relief.

In addition to there being no genuine issues of material fact, the Charter Schools have a clear legal right to declaratory, mandamus and injunctive relief. Accordingly, the Court grants the Charter Schools' Application.

## Costs

Section 1726 of the Judicial Code provides, in relevant part:

[(a)](1) Attorney's fees are not an item of taxable costs except to the extent authorized by [S]ection 2503 [of the Judicial Code, 42 Pa. C.S. § 2503] (relating to right of participants to receive counsel fees).

[(a)](2) **The prevailing party should recover his costs from the unsuccessful litigant** except where the:

> (i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

> (ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

> (iii) Application of the rule would work substantial injustice.

19

[(a)][3] The imposition of actual costs or a multiple thereof may be used as a penalty for violation of general rules or rules of court.

42 Pa.C.S. § 1726. This Court has specifically ruled that "the General Assembly provide[s] for the assessment of costs against the Commonwealth under [Section] 1726 [of the Judicial Code]," when the Commonwealth and/or its agency is the unsuccessful litigant.[15] *Inmates of B-Block v. Jeffes*, 483 A.2d 569, 571 (Pa. Cmwlth. 1984). Accordingly, where, as here, there is no fund to bear the Charter Schools' costs, the applicable law is certain, and application of the rule will not work a substantial injustice, this Court holds that the Charter Schools are entitled to recover allowable litigation costs from Respondents.

## Attorney's Fees

The American Rule states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established exception. *Lavelle v. Koch,* . . . 617 A.2d 319, 323 ([Pa.] 1992). In Pennsylvania, the American Rule is embodied in [Section 1726(a)(1) of the Judicial Code,] 42 Pa.C.S. § 1726(a)(1), which provides that attorneys' fees are not an item of taxable costs except as permitted by [Section 2503 of the Judicial Code,] 42 Pa.C.S. § 2503 (relating to right of participants to receive counsel fees), which is not at issue here.[FN]16 Thus, we must determine whether there is express statutory authorization or some other established exception for the imposition of attorneys' fees found in the aforementioned provisions of the Declaratory Judgments Act.

[FN]16 The Commonwealth Court stated several times in its opinion that it 'could have' found the imposition of attorneys' fees appropriate pursuant to [Section 2503(7) of the Judicial Code,] 42 Pa.C.S. §

---

[15] Moreover, "sovereign immunity does not preclude an assessment of costs against the Commonwealth where the underlying suit was not barred. . . ." *Inmates of B-Block v. Jeffes*, 483 A.2d 569, 572 (Pa. Cmwlth. 1984).

2503(7), which permits the imposition of counsel fees 'as a sanction for dilatory, obdurate or vexatious conduct during the pendency of a matter.' We find, however, that it did not base its award on Section 2503(7) [of the Judicial Code], as it stated: 'The School District of Philadelphia was ably represented in this litigation, and the award of attorneys['] fees is granted *solely* pursuant to the Declaratory Judgments Act.' Slip op. dated December 18, 2000 at 6 (emphasis added). Thus, we do not examine the propriety of the award under Section 2503(7) [of the Judicial Code].

*Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 813 A.2d 813, 822-23 (Pa. 2002). The *Mosaica Academy Charter School* Court held that attorney's fees may be ordered in a charter school's favor (as against a school district) *to effectuate a declaratory judgment*, but not as ancillary relief under the Declaratory Judgments Act. *Id.*

Relative to mandamus, Section 8303 of the Judicial Code provides: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303. "[A]ny claim for counsel fees by a successful plaintiff in a mandamus action should be awarded only after a consideration of the factors set forth in [S]ection 2503 [of the Judicial Code, 42 Pa.C.S. § 2503]." *Twp. of Marple v. Weidman*, 613 A.2d 94, 95 (Pa. Cmwlth. 1992). "[A]n award for counsel fees under Section 2503 [of the Judicial Code] is meant to compensate the innocent litigant for costs caused by the actions of the opposing party." *Maurice A. Nernberg & Assocs. v. Coyne*, 920 A.2d 967, 972 (Pa. Cmwlth. 2007).

Section 2503 of the Judicial Code provides, in pertinent part:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . . .

21

(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious **conduct during the pendency of any matter**.

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious **conduct during the pendency of a matter**.

. . . .

(9) Any participant who is awarded counsel fees because the **conduct of another party in commencing the matter or otherwise** was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503 (emphasis added). Clearly, "the plain meaning of [Section] 2503(7) and (9) [of the Judicial Code] is that attorney's fees may be appropriate for misconduct occurring in commencement of or during the pendency of statutory appeals." *Dep't of Transp., Bureau of Driver Licensing v. Smith*, 602 A.2d 499, 504 (Pa. Cmwlth. 1992). This Court has further interpreted that

> [t]he phrase 'or otherwise' in [Section 2503(9) of the Judicial Code] refers to misconduct in the raising of defenses, and cannot be construed to refer to the [Commonwealth agency's] action before the commencement of the case in court. [*Dep't of Transp., Bureau of Driver Licensing v.*] *Smith*[, 602 A.2d 499 (Pa. Cmwlth. 1992)].

*Norris v. Commonwealth*, 634 A.2d 673, 676 (Pa. Cmwlth. 1993). Accordingly, "[Section 2503 of the Judicial Code], by its very terms, is a 'taxable costs' provision, thereby relating to the conduct of a party at some point **during the litigation process**."[16] *Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.*, 71 A.3d 379, 393 (Pa. Cmwlth. 2013) (emphasis added).

---

[16] The term "litigation" is defined as "[t]he process of carrying on a lawsuit." *Black's Law Dictionary* 1017 (9th ed. 2009).

Here, *after* the Charter Schools commenced this action on February 8, 2016, Respondents continued to delay and/or refuse the Charter Schools' withholding requests. Also *during the pendency of this matter* since the Complaint was filed, the Department issued its March 2016 Notice wherein it declared that the matter "will proceed to administrative hearing as prescribed by [*Chester II*]" and, "[a]s a result of the record established through the administrative hearing process, the Secretary will then issue a decision." Application Ex. A. Notwithstanding, Respondents have failed to make any withholdings and/or schedule a hearing.

We hold that Respondents' retroactive application of a significant policy change without proper notice to the Charter Schools or the District was, at the very least, arbitrary, and its ongoing refusal to withhold reconciliation funds and/or schedule a hearing in accordance with the CSL since the Complaint was filed is dilatory and obdurate. Thus, the Charter Schools are entitled to attorney's fees from Respondents related to the Charter Schools' mandamus action.[17]

### III. Preliminary Objections

Having determined that the Charter Schools are entitled to summary relief, Respondents' Preliminary Objections are overruled as moot. *See Leach v. Commonwealth*, 118 A.3d 1271, 1289 (Pa. Cmwlth. 2015), *aff'd*, 141 A.3d 426 (Pa. 2016); *see also Marshall v. Pa. Bd. of Prob. & Parole*, 638 A.2d 451 (Pa. Cmwlth.

---

[17] This Court acknowledges that when it imposes costs, including attorney's fees, against Respondents that the taxpayers are the ultimate payor. Accordingly, the Court is loath to assess costs or fees against a Commonwealth agency except in exceptional and limited circumstances. In this instance, the District is statutorily obligated to pay the monies owed to the Charter Schools. For reasons unknown to the Court, the District did not pay the Charter Schools and, thus, the Department was required to withhold the District's subsidies for that purpose, but refused to do so. By assessing costs and fees against Respondents in this case, the Respondents' wrongdoing is clearly communicated and a smaller burden will be borne by all Commonwealth taxpayers, as opposed to the smaller numbers of taxpayers in each affected school district.

1994) (summary relief may be granted before disposing of outstanding preliminary objections).

## IV. Conclusion

*Chester II* does not apply to the circumstances presented in this case, nor did Respondents seek to adhere to its ruling. Based upon the particular facts presented herein, the Charter Schools' Application is granted. Accordingly, we direct Respondents to:

> (1) Deduct and withhold $425,658.74 for the 2014-2015 school year, as documented by the Charter Schools, from any and all state payments made to the School District of Philadelphia.
>
> (2) Pay to the Charter Schools costs and attorney's fees incurred from the date the Charter Schools' Complaint was filed with this Court, until the aforementioned amounts are deducted and withheld by Respondents.
>
> Respondents' Preliminary Objections are overruled.

_____
ANNE E. COVEY, Judge

24

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

KIPP Philadelphia Charter Schools,  :
                          Petitioner  :
                                      :
              v.                      :
                                      :
Commonwealth of Pennsylvania,         :
Department of Education; and Pedro A. :
Rivera, in his official capacity as   :
Secretary of Education,               :         No. 52 M.D. 2016
                        Respondents   :

## O R D E R

AND NOW, this 1st day of May, 2017, KIPP Philadelphia Charter Schools' (Charter Schools) Application for Summary Relief is GRANTED. The Commonwealth of Pennsylvania, Department of Education and Pedro A. Rivera (Respondents) are directed to:

(1) Deduct and withhold $425,658.74 for the 2014-2015 school year, as documented by the Charter Schools, from any and all state payments made to the School District of Philadelphia.

(2) Pay to the Charter Schools costs and attorney's fees incurred from the date the Charter Schools' Complaint was filed with this Court, until the aforementioned amounts are deducted and withheld by Respondents.

Respondents' Preliminary Objections are OVERRULED.

_____
ANNE E. COVEY, Judge