Baden Academy Charter School,   :
Central Pennsylvania Digital Learning   :
Foundation Charter School, Collegium   :
Charter School, Hill House Passport   :
Academy Charter School, Manchester   :
Academic Charter School, Pennsylvania :
Cyber Charter School, Penn Hills   :
Charter School for Entrepreneurship,   :
Pennsylvania Leadership Charter   :
School, Renaissance Academy Charter   :
School, Urban Academy of Greater   :
Pittsburgh Charter School,   :
                 Petitioners   :
  :
           v.   :
  :
Commonwealth of Pennsylvania,   :
Department of Education, the Secretary :
of Education, Pedro A. Rivera   :
(In His Official Capacity),   :   No. 46 M.D. 2016
          Respondents   :   Submitted: December 8, 2017


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED: June 8, 2018


        Before this Court is the Second Amended Petition for Review (Petition) filed by the Pennsylvania Coalition of Public Charter Schools (Coalition) and 20 Pennsylvania charter schools, including Baden Academy Charter School, Central Pennsylvania Digital Learning Foundation Charter School, Collegium Charter School, Hill House Passport Academy Charter School, Manchester Academic Charter School, Pennsylvania Cyber Charter School, Penn Hills Charter School for

Entrepreneurship, Pennsylvania Leadership Charter School, Renaissance Academy Charter School, and Urban Academy of Greater Pittsburgh Charter School (collectively, Charter Schools)[1] against the Commonwealth of Pennsylvania, Department of Education (Department) and Pedro A. Rivera, in his official capacity as Secretary of Education (Secretary) (collectively, Respondents). Also before this Court are the applications for summary relief filed by Respondents (Respondents' Summary Relief Application), and the Charter Schools (Charter Schools' Summary Relief Application), and preliminary objections filed by Respondents (Respondents' Preliminary Objections).

## I.  Background

"Pursuant to [S]ection 1725-A of the . . . Charter School Law (CSL)[2] . . . , a school district that has any resident students enrolled in a charter school must pay the charter school for each enrolled student."[3]  *Waslow v. Pa. Dep't of Educ.*, 984

---

[1] This litigation initially included claims by the Coalition and 20 petitioning charter schools. This Court has since discontinued the Coalition's action and also the actions by Charter Schools who represented that their claims have been resolved. The caption has been amended accordingly. As of July 31, 2017, only the above-captioned Charter Schools and Respondents remain parties to this action.

[2] Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. § 17-1725-A. The CSL amended Article XVII-A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

[3] Section 1725-A(a) of the CSL states, in relevant part:

> Funding for a charter school shall be provided in the following manner:
>
> (1) There shall be no tuition charge for a resident or nonresident student attending a charter school.
>
> (2) For non-special education students, **the charter school shall receive for each student** enrolled no less than the budgeted total expenditure per average daily membership of the prior school year, as defined in [S]ection 2501(20) [of the Public School Code], minus the budgeted expenditures of the district of residence for nonpublic school programs; adult education programs; community/junior

2

A.2d 575, 576 (Pa. Cmwlth. 2009) (footnote omitted). Section 1725-A(a)(5) of the CSL requires that "[p]ayments shall be made to the charter school in twelve (12) equal monthly payments, by the fifth day of each month, within the operating school year." 24 P.S. § 17-1725-A(a)(5). Under former Governor Thomas W. Corbett's administration,[4] the Department permitted charter schools to conduct end-of-year reconciliations and thereafter seek to have Respondents withhold any underfunded amounts from delinquent school districts' state subsidies pursuant to Section 1725-A(a)(5) of the CSL. That provision provides:

> If a school district fails to make a payment to a charter school as prescribed in this clause, the [S]ecretary shall deduct the estimated amount, as documented by the charter school, from any and all [s]tate payments made to the district after receipt of documentation from the charter school.

24 P.S. § 17-1725-A(a)(5).[5]

---

college programs; student transportation services; for special education programs; facilities acquisition, construction and improvement services; and other financing uses, including debt service and fund transfers as provided in the Manual of Accounting and Related Financial Procedures for Pennsylvania School Systems established by the [D]epartment. **This amount shall be paid by the district of residence of each student.**

(3) For special education students, **the charter school shall receive for each student** enrolled the same funding as for each non-special education student as provided in clause (2), plus an additional amount determined by dividing the district of residence's total special education expenditure by the product of multiplying the combined percentage of [S]ection 2509.5(k) [of the Public School Code, 25 P.S. § 25-2509.5(k)] times the district of residence's total average daily membership for the prior school year. **This amount shall be paid by the district of residence of each student.**

24 P.S. § 17-1725-A(a) (emphasis added). Section 2509.5(k) of the Public School Code was added by Section 18 of the Act of August 5, 1991, P.L. 219.

[4] Thomas W. Corbett served as Pennsylvania Governor from January 18, 2011 to January 20, 2015.

[5] Section 1725-A(a)(6) of the CSL states:

> Within thirty (30) days after the [S]ecretary makes the deduction described in [Section 1725-A(a)](5) [of the CSL], a school district

3

The Charter Schools aver in the Petition that they "have submitted properly[-]documented requests for [2014-2015 school year] funding to [50 non-compliant] school districts [(School Districts)] and to [Respondents] in accordance with the requirements of the [CSL] and have not been paid."  Petition ¶ 92; *see also* Petition ¶¶ 111-114, 242, 254, 262, 275, 281, 287-290, 296, 302, 308, 314-317, 323-325, 331-333.  On January 8, 2016, the Department notified Pennsylvania charter schools and school districts (January 2016 Notice):

> In 2012, the Pennsylvania Commonwealth Court [in *Chester Community Charter School* [*(CCCS)*]*v. Department of Education*, 44 A.3d 715 . . . ] [(Pa. Cmwlth. 2012) (*Chester II*)] determined that the mandatory withholding requirements of [S]ection 1725-A(a)(5) of the [CSL] apply only to claims on current year funding.  The prior

> may notify the [S]ecretary that the deduction made from [s]tate payments to the district under this subsection is inaccurate.  The [S]ecretary shall provide the school district with an opportunity to be heard concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

24 P.S. § 17-1725-A(a)(6).

The Act of July 13, 2016, P.L. 716, amended Section 1725-A(a)(5) of the CSL by adding:

> No later than October 1 of each year, a charter school shall submit to the school district of residence of each student final documentation of payment to be made based on the average daily membership for the students enrolled in the charter school from the school district for the previous school year.  If a school district fails to make payment to the charter school, the [S]ecretary shall deduct and pay the amount as documented by the charter school from any and all [s]tate payments made to the [school] district after receipt of documentation from the charter school from the appropriations for the fiscal year in which the final documentation of payment was submitted to the school district of residence.

24 P.S. § 17-1725-A(a)(5).  The amendment was immediately effective on July 13, 2016 and, thus controls claims made thereafter.

administration delayed the implementation of the [C]ourt's decision.

> [**The Department**] cannot contravene the law, and therefore **will cease the end-of-year reconciliation process**. Instead, **charter schools may work directly with resident school districts to reconcile each school year's tuition payments** based on the number of days that each student was enrolled in the charter school.
>
> Charter schools may continue to submit invoices to [the Department] for deduction of estimated amounts related to current school year enrollment. However, pursuant to the law, charter schools must first provide resident school districts with an invoice and must have provided the resident school district with sufficient time and opportunity to make a payment before requesting subsidy redirection from [the Department]. Therefore, [**the Department**] **will only process charter school withholding requests that relate to the enrollment of students in the current school year**.

Petition Ex. A (emphasis added). Effectively, the Department declared it would only redirect delinquent school districts' funding under Section 1725-A(a)(5) of the CSL during the current fiscal year and a school district's failure to pay outstanding prior-year balances would be a matter for charter schools and school districts to resolve. Accordingly, once the 2015-2016 school year ended, the Department would no longer honor requests to deduct or withhold from state payments to school districts amounts due and owing to charter schools for that or any previous year.

On February 5, 2016, the Charter Schools commenced this action. On March 7, 2016, the Department issued a letter to all charter schools, including the Charter Schools (March 2016 Notice), clarifying:

> On January 8, 2016, the [Department] notified charter schools and school districts that it would no longer be performing an end-of-year reconciliation process. However, prior to issuing this notification, the Department received documentation from charter schools for the 2014-2015 school year. As a result, the Department is providing

5

school districts with the information received prior to January 8, 2016. One or more charter schools have prepared the enclosed report(s) related to payments made and the amount claimed to be due for students enrolled during the 2014-2015 school year.

As indicated in its previous communication, the Department will not be withholding funds related to the documentation submitted by charter schools because there are no 2014-[20]15 funds from which to withhold. **This matter will proceed to an administrative hearing** as prescribed by [*Chester II*].

As a result of the record established through the administrative hearing process, the Secretary will then issue a decision. Since there are no 2014-[20]15 funds from which to withhold, the manner in which funds are paid based on the Secretary's decision will be decided by the respective charter school and school district.

Petition Ex. B (emphasis added).

According to the Petition, "after this matter was filed and amended once, [Respondents] issued several notices to a small number of the Charter Schools related to administrative hearings."[6] Petition ¶ 160. According to the notices, "[Respondents] had 'initially determined that [] this proceeding could be resolved through dispute resolution procedures. Therefore, the parties [we]re encouraged to engage in dispute resolution to resolve th[eir] matter[s] prior to the assignment of a hearing officer, the filings of memoranda of law or issuance of a final adjudication.'" Petition ¶ 161. Respondents further declared in the notices that "a hearing officer

---

[6] According to the Charter Schools' Summary Relief Application, "in early May 2016, [Respondents] sent the initial notice letters for the administrative process to brick and mortar [Charter Schools]." Charter Schools' Summary Relief App. ¶ 31. "[Respondents] did not sen[d] the initial notice letters for the administrative process to the cyber [Charter Schools] until months later (October 7, 2016)." Charter Schools' Summary Relief App. ¶ 32.

w[ould] be assigned if the parties did not request dispute resolution within 30 days." Petition ¶ 162.[7]

According to the Petition, at a June 20, 2016 pre-hearing conference for the *CCCS* matter, William Penn "agreed that there [was] no dispute with the amount of CCCS['] 2014-[20]15 reconciliation claim[.]" Petition ¶ 165. In the Petition, the Charter Schools further averred that Respondents took the position in that case that the administrative hearings were intended to establish only the amounts claimed, and that a judgment could be issued against William Penn, but Respondents lacked the authority and mechanism by which to enforce any resultant judgment. Petition ¶¶ 166-167. Accordingly, Respondents declared that if the reconciliation amount was not disputed, the process described in their notices "would do nothing to address the claim[s]." Petition ¶ 168; *see also* Petition ¶ 344.

On June 30, 2016,[8] the Coalition and the Charter Schools filed the Petition against Respondents and the School Districts seeking: (1) an order directing the School Districts or Respondents to pay the Charter Schools monies owed to them for the 2014-2015 school year (Count I); (2) a declaration from this Court ruling, essentially, that the Charter Schools have exhausted their administrative remedies, that Respondents are in violation of the CSL's mandatory fund withholding provisions, that *Chester II* does not prevent its 2014-2015 school year claims, and that the Department must withhold the funds as mandated by the CSL (Count II);[9] (3)

---

[7] On June 3, 2016, Respondents assigned a hearing officer for the *Chester Community Charter School v. William Penn School District* (*William Penn*) (BBFM-00-2015-07) dispute and, by July 7, 2016 order, the Department scheduled the hearing for August 26, 2016. *See* Petition ¶ 163. "The hearing was canceled at the parties' request and the matter was submitted on stipulations of fact and briefs." CCCS' Summary Relief App. Ex. B at 2.

[8] The Charter Schools' initial petition for review was filed on February 5, 2016. They filed an amended petition for review on April 6, 2016. The Petition was filed on June 30, 2016.

[9] Specifically, the Charter Schools requested judgment in their favor and an order declaring that: (a) the Charter Schools have exhausted their administrative remedies; (b) *Chester II* is limited to its facts; (c) *Chester II* does not require withholding and redirection only from funds budgeted in

a mandamus order directing the Secretary to withhold the School District's state funds until the Charter Schools are paid in full, to redirect the Charter Schools' overdue payments, and to make all outstanding payments to the Charter Schools (Count III); (4) a mandamus order directing the non-compliant School Districts to immediately pay the monies owed, plus costs and attorney's fees, consequential losses, loss of investment income and expenses and interest for borrowing money necessitated by Respondents' acts or omissions, in accordance with Section 8303 of

---

the prior school year; (d) *Chester II* does not impose an absolute limitation period/time bar under which redirection or reconciliation requests or direct payments must be made; (e) *Chester II* does not forbid the Department from withholding and redirecting state funding where the Charter Schools' payment claims were made within the school year but the process was delayed through no fault of the Charter Schools; (f) *Chester II* does not forbid the Department from withholding and redirecting state payments where the Charter Schools' claims were made in accordance with the Department's procedures, but the Department failed to pay them; (g) the January 2016 Notice that the law or *Chester II* preclude the Department from withholding the claimed funds is incorrect; (h) the Department's refusal to redirect funds unjustly enriched the non-compliant School Districts; (i) prospective withholding and payment of budgeted funds from non-compliant School Districts in unlawfully-retained amounts does not constitute the Commonwealth's payment of money damages; (j) Charter Schools' withholding, redirection or reconciliation requests to the School Districts for the 2014-2015 school year in accordance with custom and practice in 2012-2013 and 2013-2014 school years triggered as a matter of law the School Districts' and the Department's mandatory obligations under the CSL; (k) under the CSL that requirement that the School Districts are primarily responsible for paying the Charter Schools is non-delegable; (l) the School Districts' mandatory and non-delegable responsibility under the CSL cannot be transferred to the Department or any other party; (m) the School Districts are responsible for their Charter School obligations if the Department does not pay withholding or redirection; (n) the Charter Schools' withholding and redirection requests shall be honored consistent with prior practice and in amounts the Court will order in a schedule; (o) the CSL requires that non-compliant School Districts' funds must be withheld and redirected until the Charter Schools are paid in full, regardless of the school year to which the request corresponds or from which state payments are withheld; (p) the CSL prohibits the Department from releasing state payments from any year to any school district that has failed to pay its charter schools in full, or is in violation of the CSL's funding provisions as of when the state payments are released; (q) the CSL requires the School Districts, the Charter Schools and the Department to reconcile and pay all due amounts regardless of the school year end date; (r) payments by the Pennsylvania Treasury or the Department to any School District constitute any and all state payments under the CSL and are subject to the Department's withholding and redirection; and, (s) the Court has exclusive jurisdiction over this matter until such time as all parties certify that compliance has been achieved. *See* Petition at 60-64.

the Judicial Code, 42 Pa.C.S. § 8303 (Count IV); (5) a writ of prohibition keeping Respondents from exercising jurisdiction, including scheduling administrative hearings and releasing state payments to non-compliant School Districts, until the Charter Schools' funds are fully restored (Count V);[10] and, (6) a permanent injunction prohibiting Respondents from enforcing the January 2016 Notice, further delaying or refusing to comply with their duties and the Charter Schools' requests to withhold and redirect state payments, failing or refusing to make all future obligations pursuant to their obligations under the United States and Pennsylvania Constitutions and the CSL, and releasing state payments to non-compliant School Districts until the Charter Schools' reconciliations are paid in full (Count VI).

On August 1, 2016, Respondents filed their Preliminary Objections seeking to dismiss Petition Counts I, II, III, V and VI for failure to state claims upon which relief may be granted. On August 30, 2016, the Charter Schools denied the allegations in Respondents' Preliminary Objections.[11]

---

[10] "[T]he purpose of [a writ of prohibition] is to protect a party from enduring a hearing or trial before a tribunal that has absolutely no power to deal with the subject matter before it[.]" *Indep. Blue Cross v. Pa. Ins. Dep't*, 670 A.2d 221, 223 (Pa. Cmwlth. 1996), *aff'd per curiam*, 687 A.2d 1117 (Pa. 1997).

[11] On May 25, 2017, the Secretary concluded in *CCCS v. William Penn*:

> [T]he requirement in [S]ection 1725-A(a)(5) [of the CSL] to make a payment is separate from the redirection remedy provided for when a charter school is not paid, which is itself also separate from [Respondents'] authority to adjudicate disputes. Furthermore, although [Respondents] cannot withhold the payments from William Penn, this does not mean that [Respondents] cannot adjudicate the dispute between William Penn and [CCCS,] and that [Respondents] cannot order William Penn to make payments to [CCCS].

CCCS' Summary Relief App. Ex. B (*CCCS* Opinion) at 17-18. The Secretary agreed that the CSL imposes a mandatory duty on school districts to pay charter schools and specifically ordered William Penn to pay CCCS $281,915.70 for the 2014-2015 school year. *See CCCS* Opinion at 11, 17-18.

Although this Court filed *Richard Allen Preparatory Charter School v. Department of Education*, 161 A.3d 415 (Pa. Cmwlth. 2017) and *KIPP Philadelphia Charter Schools v.*

9

On June 23, 2017, Respondents filed their Summary Relief Application seeking judgment in their favor and against the Charter Schools because, *inter alia*, the July 13, 2016 CSL amendment (Act 86) "squarely addresses and resolves the challenges to the reconciliation process asserted by [the Charter Schools and the Coalition] . . . with respect to the 2015-[20]16 . . . and subsequent school years" and, thus, moots their claims for prospective declaratory and injunctive relief.[12] Respondents' Summary Relief App. ¶ 3. On July 7, 2017, the Charter Schools opposed Respondents' Summary Relief Application.

On June 28, 2017, the Charter Schools filed their Summary Relief Application seeking declarations in their favor relative to Petition Count I (for delinquent 2014-2015 school year payments) and Count II (for the Department to withhold the School Districts' delinquent funds), plus costs and attorney's fees, pursuant to this Court's decisions in *Richard Allen Preparatory Charter School v. Department of Education*, 161 A.3d 415 (Pa. Cmwlth. 2017), *aff'd per curiam*, ___ A.3d ___ (Pa. No. 19 EAP 2017, filed June 1, 2018), and *KIPP Philadelphia Charter Schools v. Department of Education*, 161 A.3d 430 (Pa. Cmwlth. 2017), *aff'd per curiam*, ___ A.3d ___ (Pa. No. 20 EAP 2017, filed June 1, 2018).[13] On July 17, 2017, Respondents opposed the Charter Schools' Summary Relief Application.

_____

*Department of Education*, 161 A.3d 430 (Pa. Cmwlth. 2017) on May 1, 2017, approximately three weeks before the *CCCS* Opinion was issued, the Secretary stated: "Because those decisions were issued after the briefing in [the *CCCS v. William Penn*] matter had closed and [were] based on facts different than those presented in [the *CCCS v. William Penn*] dispute, they [were] not addressed [there]in." *CCCS* Opinion at 12 n.3.

[12] Respondents acknowledge that, since Act 86 was not retroactive, Act 86 did not resolve the 2014-2015 school year reconciliations at issue in this action. Rather, the 2016 CSL amendment controls charter schools' reconciliations for the 2015-2016 and subsequent school years. *See* Respondents' Summary Relief App. ¶¶ 2, 4, 7; *see also* Respondents' Br. at 17-18, 20-21.

[13] In *Richard Allen* and *KIPP*, charter schools sought direct payment and declaratory, mandamus and injunctive relief in their favor and against Respondents for the precise circumstances presented in the case at bar. Respondents similarly filed preliminary objections to the charter schools' complaints. This Court, *en banc*, granted summary relief in favor of the petitioning charter

## II. Summary Relief

> [Pennsylvania Rule of Appellate Procedure] 1532(b) provides that '[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear.' Pa.R.A.P. 1532(b). 'An application for summary relief is properly evaluated according to the standards for summary judgment.' *Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015). That is, in ruling on a[n application] for summary relief, the **evidence must be viewed in the light most favorable to the non-moving party** and **the court may enter judgment only if**: (1) there are **no genuine issues of material fact**; **and** (2) the **right to relief is clear as a matter of law**.

*Flagg v. Int'l Union, Sec., Police, Fire Prof'ls of Am., Local 506*, 146 A.3d 300, 305 (Pa. Cmwlth. 2016) (emphasis added).

### A. Genuine Issue of Material Fact

The Charter Schools expressly state that there are no genuine issues of material fact to be resolved. *See* Charter Schools' Summary Relief App. ¶ 110; *see also* Charter Schools' Br. in Support of Summary Relief App. at 15. Although Respondents do not similarly declare that there are no outstanding factual issues, their Summary Relief Application seeks judgment in its favor on the bases the Charter Schools' 2014-2015 tuition reconciliation claims have been resolved, and Act 86 provides the means for the Charter Schools to obtain funds thereafter. *See* Respondents' Summary Relief App. ¶¶ 15, 18, 20. Accordingly, neither of Respondents' purported dismissal grounds call upon this Court to resolve a material

---

schools, and awarded costs and attorney's fees. The Court overruled Respondents' preliminary objections as moot.

11

factual issue. Rather, the issue before the Court is whether the Charter Schools are entitled to judgment as a matter of law.

**B. Clear Right to Relief**

In the Petition, the Charter Schools ask this Court to direct Respondents to withhold the School Districts' state funding for payment to the Charter Schools. The Charter Schools also request a writ of prohibition. Further, the Charter Schools seek declaratory, mandamus and/or injunctive relief.

**1. Payment Order**

In the Petition, the Charter Schools claim that they "have submitted properly[-]documented requests for [2014-2015 school year] funding to [50 non-compliant School Districts] and to [Respondents] in accordance with the requirements of the [CSL] and have not been paid." Petition ¶ 92; *see also* Petition ¶¶ 111-114, 262, 275, 281, 287-290, 296, 302, 308, 314-317, 323-325, 331-333. In Petition Count I, the Charter Schools request an order from this Court directing the non-compliant School Districts or Respondents to pay the Charter Schools monies owed to them for the 2014-2015 school year.

However, this Court has systematically dismissed each School District as the Charter Schools' reconciliation claims against them were resolved. The last of the School Districts were dismissed from this action by July 31, 2017 order. Also as of July 31, 2017, this Court discontinued this action as to the Coalition and most of the Charter Schools whose reconciliation claims have been settled. As a result, the only petitioners remaining in this action are the above-captioned Charter Schools.

Of the remaining Charter Schools, Baden Academy Charter School, Central Pennsylvania Digital Learning Foundation Charter School, Collegium Charter School and Renaissance Academy Charter School did not allege in the

12

Petition that any School District owed them funds for the 2014-2015 school year (hereinafter referred to as Declaration Charter Schools).[14] *See* Petition ¶¶ 5, 6, 10, 24. Although Hill House Passport Academy Charter School, Manchester Academic Charter School, Pennsylvania Cyber Charter School, Penn Hills Charter School for Entrepreneurship, Pennsylvania Leadership Charter School, and Urban Academy of Greater Pittsburgh Charter School made funding requests for the 2014-2015 school year, *see* Petition ¶¶ 13-18, 20-23, 26-27, those claims have been resolved (hereinafter referred to as Owed Charter Schools).[15]

Because the above-captioned Charter Schools either had no funding claims against the School Districts, or such claims have been resolved, there is no legal bases upon which this Court can now direct Respondents to withhold the School Districts' state funding to pay the Charter Schools. Under the circumstances, Respondents have a clear right to relief in their favor as to Petition Count I.

## 2. Writ of Prohibition

In Petition Count V, the Charter Schools seek a writ of prohibition to keep Respondents from exercising jurisdiction - particularly by scheduling administrative hearings and/or releasing state payments to non-compliant School Districts - until the Charter Schools' funds are fully restored. However, because the remaining Charter Schools have no outstanding funding claims, there is no legal basis upon which this Court may now prohibit Respondents from exercising jurisdiction over hearing schedules or the School Districts' state funding payments. Under such

---

[14] *See* Charter Schools' Summary Relief App. at 3. Because these Charter Schools did not assert reconciliation claims, they primarily seek a declaration of their rights and Respondents' duties.

[15] *See* Charter Schools' Summary Relief App. at 2-3. These Charter Schools brought this legal action to resolve their unpaid 2014-2015 school year reconciliation claims and to obtain a declaration of their rights and Respondents' duties.

13

circumstances, Respondents have a clear right to relief in their favor as to Petition Count V.

### 3. Declaratory Relief

In Petition Count II, the Charter Schools seek declarations from this Court that they have exhausted their administrative remedies, that Respondents violated the CSL's mandatory fund withholding provisions and, since *Chester II* does not prevent its 2014-2015 school year claims, the Department must withhold funds as mandated by the CSL.

Section 7532 of the Declaratory Judgments Act provides: "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. Section 7541(a) of the Declaratory Judgments Act states that "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a). "Granting or denying a petition for a declaratory judgment is committed to the sound discretion of a court of original jurisdiction." *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276, 1285 (Pa. Cmwlth. 2009).

> However, declaratory judgment is appropriate **only** where there exists an actual controversy. *Allegheny C[ty]. Constables Ass'n, Inc. v. O'Malley*, . . . 528 A.2d 716 ([Pa. Cmwlth.] 1987). 'An actual controversy exists when litigation is both imminent and inevitable and the declaration sought will practically help to end the controversy between the parties.' *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 80 (Pa. Cmwlth. 2010) (*Chester I*).

*Richard Allen*, 161 A.3d at 422; *see also KIPP*, 161 A.3d at 438.

This Court has already declared:

The General Assembly mandated in Section 1725-A(a)(5) of the CSL that '[i]f a school district fails to make payment to the charter school, **the [S]ecretary <u>shall deduct and</u> pay the amount as documented by the charter school <u>from any and all [s]tate payments</u> made to the [school] district** after receipt of documentation from the charter school[.]' 24 P.S. § 17-1725-A(a)(5) (bold and underline emphasis added). This Court has declared that '[t]here is no air in Section 1725-A(a)(5) [of the CSL]. . . . There is **no discretion to exercise** . . . .' *Chester I*, 996 A.2d at 77-78 (emphasis added). Rather, '[t]he Department has a **mandatory, non-discretionary duty** to withhold subsidies to a school district based upon the estimated amount documented by the charter school.' *Id.* at 78 (emphasis added). Therefore,

> [u]nder [Section 1725-A(a)(5) of the CSL], if a school district does not make its required statutory payments, the Secretary, upon notification by the affected charter school, shall deduct the estimated amount as documented by the charter school from any and all state payments made to the school district. If a school district refuses to transfer funds to a charter school, the Secretary has no discretion to decline to withhold the estimated amount of payment from the charter school. Thus, *the Secretary has a mandatory, non-discretionary obligation to deduct the estimated amount of payment due a charter school by a school district upon submission of supporting documentation by the charter school.* [Under Section 1725-A(a)(6) of the CSL, a] school district has 30 days to challenge the accuracy of the estimated amount withheld by the Secretary and to require the Secretary to provide the school district with an opportunity to be heard on the estimated deduction.

*Chester II*, 44 A.3d at 719-20.

Despite this Court's acknowledgement in *Chester II* that Section 1725-A(a) of the CSL represents the Charter School's exclusive remedy against the [School] Districts for the underfunded amounts, and that the Charter School

15

submitted a reconciliation request and supporting documentation, **the Secretary has not deducted and withheld or paid the outstanding funds to the Charter School, nor scheduled a hearing**. Under the circumstances, this matter presents imminent and inevitable litigation that a declaration from this Court would resolve for the Charter School and, perhaps, the limited number of similarly-situated charter schools. *Chester I.*

*Richard Allen*, 161 A.3d at 422-23 (italic emphasis added); *see also KIPP*, 161 A.3d at 438-39 (emphasis added). This Court further concluded that *Chester II* does not prohibit charter schools from making their 2014-2015 school year reconciliation claims, or prevent Respondents from acting on them, in the 2015-2016 school year. *Richard Allen*; *KIPP*. Finally, this Court ruled in *Richard Allen* and *KIPP*:

> [T]he Department's January 2016 Notice and its failure to conduct a hearing pursuant to the CSL have left the Charter School[s] without a means to assert [their] statutory rights, [they have exhausted their administrative remedies, and] this Court has jurisdiction over [their] claims for declaratory, mandamus and injunctive relief.[16]

*Richard Allen*, 161 A.3d at 421 n.8; *see also KIPP*, 161 A.3d at 437 n.8. Accordingly, the law is settled that Respondents violate Section 1725-A(a)(5) of the CSL if they do not deduct and withhold or pay undisputed, outstanding 2014-2015 school year funds owed by delinquent school districts to charter schools that have submitted reconciliation requests and supporting documentation. *Richard Allen*; *KIPP*.

In the instant matter, it is clear on the face of the Petition that the Declaration Charter Schools did not submit reconciliation requests and supporting documentation to Respondents for outstanding 2014-2015 school year funds. Under

---

[16] This Court reasoned: "Were we to adopt Respondents' position that this Court lacks any jurisdiction whatsoever to hear this matter [until a hearing examiner issues a final order after a hearing], the Charter School[s'] causes of action would be hamstrung for as long as Respondents choose not to act." *Richard Allen*, 161 A.3d at 421 n.8; *see also KIPP*, 161 A.3d at 437 n.8.

the circumstances, the Declaration Charter Schools did not exhaust their administrative remedies and, therefore, Respondents did not violate Section 1725-A(a) of the CSL as to them.

The Owed Charter Schools, on the other hand, submitted reconciliation requests and supporting documentation to Respondents for undisputed, outstanding 2014-2015 school year funds, and Respondents failed to deduct or withhold the delinquent School Districts' funds in accordance with the CSL. Thus, the Owed Charter Schools exhausted their administrative remedies, and Respondents violated Section 1725-A(a) of the CSL relative to their reconciliation claims.

However, in order for this Court to render a declaratory judgment in this matter, the Charter Schools "must show the existence of an actual controversy related to the invasion or a threatened invasion of [their] legal rights." *Berwick Twp. v. O'Brien*, 148 A.3d 872, 881 (Pa. Cmwlth. 2016). A declaratory judgment "must not be employed to determine rights in anticipation of events that may never occur or for consideration of moot cases[17] or for the rendition of an advisory opinion that may

---

[17] As a general rule, courts will not decide moot cases. '[A] case is moot if there is no actual case or controversy in existence at all stages of the controversy.' *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 448 (Pa. Cmwlth. 2012). As this Court explained in *Philadelphia Public School Notebook:*

> Mootness problems arise in cases involving litigants who clearly had one or more justiciable matters at the outset of the litigation, but events or changes in the facts or law occur which allegedly deprive the litigant of the necessary stake in the outcome after the suit is underway.

*Id.* It is well settled that the courts 'do not render decisions in the abstract or offer purely advisory opinions.' *Pittsburgh Palisades Park, LLC v. Commonwealth, . . .* 888 A.2d 655, 659 ([Pa.] 2005). *Costa v. Cortes*, 142 A.3d 1004, 1016 (Pa. Cmwlth.), *aff'd per curiam*, 145 A.3d 721 (Pa. 2016).

> [T]here are exceptions to the mootness doctrine for circumstances where '(1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public

prove to be academic." *Mazur v. Wash. Cty. Redevelopment Auth.*, 954 A.2d 50, 53 (Pa. Cmwlth. 2008). Here, *Richard Allen* and *KIPP* settled the issue of Charter Schools' rights and Respondents' responsibilities related to the 2014-2015 school year reconciliation claims, the Declaration Charter Schools had no 2014-2015 claims, the Owed Charter Schools resolved their 2014-2015 claims,[18] and the July 13, 2016 amendment to Section 1725-A(a) of the CSL controls claims made thereafter. Under such circumstances, there is no actual controversy upon which this Court may render declaratory judgment.[19]

Accordingly, Respondents have a clear right to relief in their favor as to Petition Count II.

### 4. Mandamus Relief

In Petition Count III, the Charter Schools also seek a mandamus order directing the Secretary to withhold the School Districts' state funds until the Charter

---

interest, or (3) will cause one party to suffer some detriment without the Court's decision.' *Cytemp Specialty Steel Div., Cyclops Corp. v. Pa. Pub. Util. Comm'n, . . .* 563 A.2d 593, 596 ([Pa. Cmwlth.] 1989).

*Costa*, 142 A.3d at 1016-17. Despite that the cases brought before this Court demonstrated that the issue of the 2014-2015 charter school reconciliations in light of the January 2016 Notice is capable of repetition, it has not evaded review. In addition, the questions were resolved by *Richard Allen* and *KIPP*. Finally, neither party will suffer detriment without this Court's declaration. Thus, the mootness doctrine exceptions do not apply in this case.

[18] The Owed Charter Schools' claims for attorney's fees and costs are denied. Costs and attorney's fees are not permissible ancillary relief in declaratory judgment actions, but rather are permitted only to effectuate a declaratory judgment already entered by the Court. *See Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 813 A.2d 813 (Pa. 2002); *see also Richard Allen* and *KIPP*.

Although this Court is dismayed at Respondents' extreme delay in acting on the Owed Charter Schools' reconciliation requests, and Respondents' disregard of *Richard Allen* and *KIPP*, the Owed Charter Schools have been paid, which is what the CSL intended.

[19] Notwithstanding the Charter Schools' argument to the contrary, *see* Charter Schools' Answer to Respondents' Summary Relief Application at 5-6, 14-15, this Court is not compelled in this case nor is it authorized to anticipate what should happen if the Commonwealth faces future protracted budget stalemates and/or Respondents fail to timely schedule administrative hearings and/or deduct and withhold state funding to satisfy post-2014-2015 school year charter school reconciliation claims.

Schools are paid in full, to redirect the Charter Schools' overdue payments, and to make all outstanding payments to the Charter Schools. In Petition Count IV, the Charter Schools request a mandamus order directing the non-compliant School Districts to immediately pay the monies owed, plus costs and attorney's fees, consequential losses, loss of investment income, and expenses and interest for borrowing necessitated by Respondents' acts or omissions, in accordance with Section 8303 of the Judicial Code, 42 Pa.C.S. § 8303.[20]

> The Pennsylvania Supreme Court has held:
>
> 'Mandamus is an extraordinary writ that will only lie to compel official performance of a ministerial act or mandatory duty **where there is a clear legal right in the plaintiff, a corresponding duty in the defendant**, and want of any other appropriate or adequate remedy.' *Jackson v. Vaughn, . . .* 777 A.2d 436, 438 ([Pa.] 2001) (citation omitted). It may be used to compel performance of a ministerial duty, or to compel action in a matter involving judgment or discretion. **However, it may not be used** to direct the exercise of judgment or discretion in a particular way, or **to direct the retraction or reversal of an action already taken**. 'Mandamus is a device that is available in our system to compel a tribunal or administrative agency to act when that tribunal or agency has been 'sitting on its hands.' ' [*Pa. Dental Ass'n v. Commonwealth Ins. Dep't, . . .* 516 A.2d 647, 652 ([Pa.] 1986).]

*Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1107-08 (Pa. 2007) (citations omitted; emphasis added).

Despite having declared that the Owed Charter Schools had a clear legal right to be paid for the 2014-2015 school year, and that Respondents had a

---

[20] Section 8303 of the Judicial Code specifies: "A person who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303.

corresponding legal duty to ensure that they were paid, since the remaining Charter Schools have no outstanding funding claims, there is no legal basis upon which this Court may now direct Respondents to withhold the School Districts' state funds and redirect the Charter Schools' overdue payments, or to make outstanding payments to the Charter Schools. Nor is there an existing legal basis to direct the non-compliant School Districts to immediately pay the monies owed, plus costs and attorney's fees, consequential losses, loss of investment income, and expenses and interest for borrowing necessitated by Respondents' acts or omissions in accordance with Section 8303 of the Judicial Code.[21]

Under the circumstances, Respondents have a clear right to relief in their favor as to Petition Counts III and IV.

### 5. Injunctive Relief

In Petition Count VI, the Charter Schools request a permanent injunction prohibiting Respondents from enforcing the January 2016 Notice, from further delaying or refusing to comply with their duties and the Owed Charter Schools' requests to withhold and redirect state payments, from failing or refusing to fulfill their obligations under the CSL, and from releasing state payments to non-compliant School Districts until the Owed Charter Schools' reconciliations are paid in full.

---

[21] The Owed Charter Schools are not entitled to attorney's fees. Attorney's fees may be awarded in mandamus actions where there has been arbitrary, dilatory and/or obdurate conduct during litigation. *See Richard Allen* and *KIPP*. Although Respondents' retroactive notice that the charter schools would not be paid was arbitrary, *id.*, and Respondents did not act on the Owed Charter Schools' reconciliation requests, the Owed Charter Schools were nevertheless ultimately paid. Accordingly, there is no act for this Court to compel Respondents to carry out. Without a mandamus order, there can be no corresponding attorney fee award.

The Owed Charter Schools' claims for costs and other awards are denied. Although this Court is dismayed at Respondents' extreme delay in acting on the Owed Charter Schools' reconciliation requests, and Respondents' disregard of *Richard Allen* and *KIPP*, the Owed Charter Schools have been paid, which is what the CSL intended.

In *Richard Allen*, this Court granted the charter school injunctive relief, stating:

> An injunction that commands the performance of an affirmative act, a 'mandatory injunction,' is the rarest form of injunctive relief and is often described as an extreme remedy. The case for a mandatory injunction must be made by a very strong showing, one stronger than that required for a restraining-type injunction. An applicant seeking mandatory injunctive relief must establish the following elements: (1) irreparable harm will occur that is not compensable by money damages; (2) greater injury will result from the denial of the injunction than by granting the injunction; (3) the injunction will restore the status quo between the parties; and (4) the party seeking relief has a clear right to relief in an actionable claim.
>
> *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 582 (Pa. Cmwlth. 2012) (citations omitted). Each of the above requirements must be satisfied before a mandatory injunction will be ordered. *Big Bass Lake Cmty. Ass'n v. Warren*, 23 A.3d 619 (Pa. Cmwlth. 2011).
>
> In the instant case, there is a strong showing that the [School] Districts had a legal obligation to fully fund the Charter School for the 2014-[]15 school year, but failed to do so, and Respondents refused to reconcile payments due to the Charter School. 24 P.S. § 17-1725-A(a). 'A violation of [a] statute constitutes irreparable harm.' *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016). Denying the injunction will result in greater harm to the Charter School than to the [School] Districts or Respondents. This Court in *Chester I* recognized:
>
> > It is clear, . . . that as between the school district and the charter school, the legislature has decided that **more harm will befall a charter school that is not paid timely and accurately than upon a school district that may experience a delay in the receipt of the state subsidy** to which it is entitled.

*Id.* at 78 (emphasis added). The injunction will restore the status quo between the Charter School and the [School] Districts. Accordingly, the Charter School is entitled to injunctive relief.

*Richard Allen*, 161 A.3d at 426-27; *see also KIPP*, 161 A.3d at 442-43.

Here, because the remaining Charter Schools have no outstanding reconciliation claims, there is no legal basis on which this Court may enjoin Respondents.

There being no genuine issues of material fact, and there being record support that Respondents have the clear right to relief in their favor, Respondents' Summary Relief Application is granted, and Petition Counts I through VI are dismissed. The Charter Schools' Summary Relief Application is denied.

### III. Preliminary Objections

Having determined that Respondents are entitled to summary relief, Respondents' Preliminary Objections are moot. *See Leach v. Commonwealth*, 118 A.3d 1271 (Pa. Cmwlth. 2015), *aff'd*, 141 A.3d 426 (Pa. 2016); *see also Marshall v. Pa. Bd. of Prob. & Parole*, 638 A.2d 451 (Pa. Cmwlth. 1994) (summary relief may be granted before disposing of outstanding preliminary objections).

### IV. Conclusion

Respondents' Summary Relief Application is granted. The Charter Schools' Summary Relief Application is denied. Respondents' Preliminary Objections are overruled as moot.

_____
ANNE E. COVEY, Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Baden Academy Charter School, :
Central Pennsylvania Digital Learning :
Foundation Charter School, Collegium :
Charter School, Hill House Passport :
Academy Charter School, Manchester :
Academic Charter School, Pennsylvania :
Cyber Charter School, Penn Hills :
Charter School for Entrepreneurship, :
Pennsylvania Leadership Charter :
School, Renaissance Academy Charter :
School, Urban Academy of Greater :
Pittsburgh Charter School, :
                Petitioners :
                 :
       v. :
                 :
Commonwealth of Pennsylvania, :
Department of Education, the Secretary :
of Education, Pedro A. Rivera :
(In His Official Capacity), : No. 46 M.D. 2016
                Respondents :

## O R D E R

AND NOW, this 8th day of June, 2018, the Application for Summary Relief filed by the Commonwealth of Pennsylvania, Department of Education and Pedro A. Rivera, in his official capacity as Secretary of Education (collectively, Respondents), is GRANTED.

The Application for Summary Relief filed by Baden Academy Charter School, Central Pennsylvania Digital Learning Foundation Charter School, Collegium Charter School, Hill House Passport Academy Charter School, Manchester Academic Charter School, Pennsylvania Cyber Charter School, Penn Hills Charter School for Entrepreneurship, Pennsylvania Leadership Charter School,

Renaissance Academy Charter School, and Urban Academy of Greater Pittsburgh Charter School is DENIED.

Respondents' Preliminary Objections are overruled as moot.

_____
ANNE E. COVEY, Judge